## PROTECTIVE LIFE INS. CO. v. WALLACE.

### 6 Div. 610.

Supreme Court of Alabama.

March 28, 1935.

Rehearing Denied May 2, 1935.

Cabaniss & Johnston and L. D. Gardner, Jr., all of Birmingham, for appellant.

London, Yancey, Smith & Windham, of Birmingham, for appellee.

KNIGHT, Justice.

The policy sued on in this case is what is known as a group policy, and was issued by the appellant, insuring the lives of the members of T. C. I. Insurance Club, Northwestern Division, of the Tennessee Coal, Iron & Railroad Company's employees. The plaintiff was an employee of said company and a member of the club, whose lives were insured by the appellant.

The testimony, upon which the case was tried, was without dispute in any particular.

It was agreed between counsel, upon the trial, that the group policy was in full force and effect up to December 31, 1931; that plaintiff was insured under said policy until December 31, 1931. It was further agreed that on December 1, 1930, the plaintiff furnished to the defendant "due and adequate proof," as averred in the complaint, of his injuries, and that he had become totally and permanently disabled as alleged in the complaint "in the sense that he had made claim to that effect and furnished due proof in the sense that he had made due proof of a claim," but it was expressly stipulated that the defendant did not admit, but expressly denied that the "plaintiff is or had become totally and permanently disabled" from following a gainful occupation.

The evidence shows, without dispute, that the plaintiff on January 13, 1930, then forty-three years of age, was employed by the Tennessee Coal, Iron & Railroad Company as a "railroad train conductor—a freight train conductor and yard work." His conductor's job was confined to "freight train or yard work, work around in the yard, switching and going out and working the coal mines." With reference to his work the plaintiff testified: "The railroad work I had been doing was switching and conductor. I am familiar with switching work. A man doing switching work has to board moving trains, and get off of them while moving. And you have to jump from one car to another while the train is moving, and in working as a conductor you at times have to board trains and get off moving trains and move from one car to another while the train is moving just the same as a switchman."

Plaintiff had been engaged in this work with the Tennessee Coal, Iron & Railroad Company continuously since 1915, and was so engaged at the time the policy of insurance was issued to him.

On the night of January 13, 1930, while coupling the air hose between two cars, the plaintiff was knocked down under one of the cars, and dragged for some distance, hung by one of the bolts in the brake rigging. As a result of this accident, the lower part of plaintiff's right leg and his foot were crushed, the body of the first lumbar vertebra was collapsed, and there was a partial collapse of the body of the second lumbar vertebra. In addition, the transverse processes of the first lumbar vertebra were fractured on both sides, and the second fractured on the left side, disengaging the muscles from the proximal end of the bone; and three ribs on the left side were fractured. The right leg had to be amputated six inches below the knee, and at the time of the trial plaintiff was using an artificial limb. Plaintiff has suffered pain from these injuries from the day of the accident to the present time.

Plaintiff was carried to the hospital on the night of the accident and remained there until April 2, 1930.

In September following the accident, the plaintiff "took a job as night watchman with the Birmingham-Southern Railroad, but on account of his injuries and suffering, was able to hold the job only four days." He then had to give it up, and go back to the hospital.

There was other evidence in the case tending to show that plaintiff was permanently injured, and that his injuries made him a constant sufferer, especially if he undertook any work requiring physical exertion other than locomotion.

In May, 1931, the Birmingham-Southern Railroad Company gave the plaintiff a job flagging at the street crossing, at First avenue and Twelfth street. The company gave plaintiff the eight-hour period when the traffic required the least effort. This job requires but little work; no manual labor. The plaintiff has held this position from May, 1931, down to the time of the trial. The compensation received by plaintiff for this

work has varied through the years. During the eight months that plaintiff worked during 1931, he received an average of $81.12 per month; during 1932 he received an average of $73.63; during 1933, his average pay was $62.30 per month; and at the time of the trial his average monthly earnings were $70. Plaintiff's testimony tended to show that he was unable to do work requiring real manual labor.

During the years he was employed by the Tennessee Coal, Iron & Railroad Company, his average monthly earnings were $187.20, approximately.

Plaintiff's education was limited to work in the grammar school through the sixth grade. He had never done any clerical work, or bookkeeping, or work of similar kind.

The provision of the policy under which plaintiff claims his right to recover in this case is: "If any member insured under this policy shall furnish this company with due proof that before having attained the age of 60 years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, the company will pay to such member in full settlement of all obligations hereunder as to such member's life, the amount of insurance in force hereunder on such member at the time of the approval by the company of the proofs as aforesaid. This amount will be paid either in one sum six months after proof of disability has been established or in installments as hereinafter provided, beginning immediately after proof of disability has been established."

The cause was tried by the court with a jury. There was verdict for plaintiff, and judgment accordingly. From this judgment the present appeal is prosecuted.

A number of errors are here assigned. Among them, the refusal of the court to give at the request of the defendant a number of special charges, including the general affirmative charge in its behalf, stated in different forms.

■■ We are met at the outset of our consideration of the case with the insistence of appellee's counsel that, inasmuch as the special charges requested by, and refused to, the appellant do not appear in the bill of exceptions, we are not authorized to consider the same. Counsel cite as his authority for this contention the case of Choate v. Alabama Great Southern R. R. Co., 170 Ala. 590, 54 So. 507.

There was a time when the Choate Case, supra, was an authoritative expression of the law on the subject, but in 1915 (Laws 1915, p. 815), the Legislature amended section 5364 of the Code of Alabama with reference to special charges moved for by either party, and since this amendment was adopted, we are permitted to review and revise the action of trial courts in the giving or refusal of special charges, whether these charges are incorporated in the record proper, or are set out in the bill of exceptions only; provided, of course, there is a bill of exceptions in the case sufficiently presenting the evidence to warrant such review. This has been our uniform practice for years. Code 1923, §§ 9509, 9510; Mobile Light & Railroad Co. v. Thomas, 201 Ala. 493, 78 So. 399; Russell v. State, 201 Ala. 572, 78 So. 916; Anniston Lumber & M'f'g. Co. v. Hughes, 226 Ala. 654, 148 So. 124.

We had thought that this rule, inasmuch as it has prevailed so long, was fully understood by the bar. The propriety of the court's action in refusing appellant's special charges is properly presented for review.

It is insisted by appellant, and with much force and earnestness, that the contract of insurance, written in the instant case, is not what is termed "occupational insurance," but was, and is, insurance against total and permanent disability, resulting in inability to engage in any gainful occupation, whether it be the occupation then followed by the insured, or any other line of business substantially remunerative, which the insured could carry on. That if the insured, though prevented, perhaps, by his bodily injuries from carrying on the business he was engaged in at the time he received his injuries, could, or did, perform other work, substantially remunerative, then, and in such event, the insured could not be held to be disabled, totally and permanently, within the true meaning of the insurance contract, providing for disability benefits. Such is no doubt the holding of a number of the courts of last resort elsewhere. The cases holding to such a view of the clause of the contract in question are listed in appellant's brief.

The courts holding to such a view, have adopted what is considered a literal construction of the language employed in the "disability benefit clause." This court has not seen proper to follow those courts in construing this provision of the contract, but long since committed itself to a more liberal construction of the contract, having due re-

gard for what we conceived to be the real intent of the parties, and the purposes intended to be accomplished. Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; New York Life Ins. Co. v. Torrance, 228 Ala. 286, 153 So. 463; New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547; Ellis v. New York Life Ins. Co., 214 Ala. 166, 106 So. 689; New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753; Jefferson Standard Life Ins. Co. v. Simpson, 228 Ala. 146, 153 So. 198, 200; Equitable Life Assur. Soc. v. Dorriety (Ala. Sup.) 157 So. 59, 61.

It is further suggested by able counsel for appellant that this court has not passed upon a contract in the language of the contract now before us, and that, therefore, we are not concluded by any former opinion. In other words, the case is one of first impression.

While it may be that the language employed in the contract now before us is slightly different in verbiage, yet we perceive no real difference in its meaning from the contracts construed in several of our cases above noted.

■Total disability contemplated in insurance policies like the one under consideration "does not mean, as its literal construction would require, a state of absolute helplessness, but means inability to do substantially all the material acts necessary to the prosecution of insured's business or occupation, in substantially his customary and usual manner"; or to do substantially all the material acts necessary to the prosecution of some gainful business or occupation, which the insured was qualified and capable of doing, and which requires substantially the same character of physical and mental training and effort. Authorities, supra.

In some of its aspects the case of Metropolitan Life Ins. Co. v. Lambert, 157 Miss. 759, 128 So. 750, is similar to the one now before us, and a recovery was sustained.

Under the evidence in this case, with the above construction placed upon the contract, the defendant was not, of course, entitled to the general affirmative charge in its behalf.

We have also examined and considered each of the defendant's other refused charges. The defendant was not entitled to have the jury instructed in the terms of any of these refused charges. Some of them were "too narrow," in that they attempted to hold the plaintiff to the literal language of the policy, while others sought to have the jury instructed contrary to the construction we have placed upon the contract in question; and besides the oral charge was sufficient to cover the law in respect to matters referred to in the refused charges, which may state correct principles. Jefferson Standard Life Ins. Co. v. Simpson, supra.

We find nothing in the segregated parts of the court's oral charge prejudicial to defendant, which call for a reversal of the case.

■We do not approve some expressions of the court's oral charge indicating the insured must be able to pursue a similar occupation equally remunerative, but on consideration of the entire charge in connection with the evidence, we are not impressed that these expressions were prejudicial.

■The evidence, as we find it in the record, conclusively shows that plaintiff's injuries were of such nature as to render him totally and permanently disabled, presumably for life, not only from pursuing the business or occupation in which he was engaged at the time he received his injuries, but from doing any other work requiring physical exertion. The evidence shows that his efforts to do the little work required of him in the position of crossing flagman, given him by the Birmingham Southern Railroad, is attended with discomfort and pain, and common prudence would seem to suggest that he should not undertake this work.

If the evidence is to be believed, and it is undisputed, the insured is totally and permanently disabled within the meaning of the total and permanent disability clause of the insurance contract.

Our study of the evidence is persuasive that the plaintiff's physical condition is such that he was not in a position in fact to enter into competition with others for the position which he holds as flagman. It appears that the Birmingham Southern Railroad is one of the affiliated companies of the Tennessee Coal, Iron & Railroad Company, some of the officials being the same individuals (the same person being the general superintendent of the two companies), and men employed are transferred from one company to the other.

While there is no direct evidence to that effect, yet it seems the jury could reasonably infer from all the evidence that plaintiff was so transferred to his present more or less inactive position, more out of consideration of his physical condition, in view of his long service, than any matter of ability to work.

We have considered all questions presented for review, and finding no reversible error, the judgment of the court a quo will be affirmed.

Affirmed.

All the Justices concur.

## On Rehearing.

Application for rehearing overruled.

All the Justices concur.

GARDNER and BROWN, JJ.

The Court on consideration of the rehearing holds that there is no conflict between the opinion in this case and the opinion in the case of Protective Life Insurance Company v. Hale (Ala. Sup.) 161 So. 248, that nothing said in the opinion in this case is intended as a modification of the utterances in the Hale Case; therefore, we concur in overruling the application for rehearing in this case.