Rodney Dean Lundquist, et al., Plaintiffs-Appellees, v. Illinois Life & Accident Insurance Company, an Illinois Corporation, and Blue Banner Service Agency, an Illinois Corporation, Defendants-Appellants.

Gen. No. 11,321.

Second District, Second Division.

February 8, 1960.

Released for publication February 25, 1960.

Knight, Ingrassia, Bourland, and Roszkowski, of Rockford (Stanley J. Roszkowski, of counsel) for appellants.

Russell J. Goldman, of Rockford, for appellees. No brief filed.

JUSTICE CROW delivered the opinion of the court.

This is a suit on several individual policies of insurance, the complaint consisting of 25 separate Counts, one Count for each individual plaintiff, against the defendant insurance company and its agent, for the alleged maternity benefits due thereunder. The defendants moved to strike and dismiss the Complaint but the Court denied the motion. The defendants then answered, denying substantially all the allegations, and, in addition, pleaded a special defense asserting that each policy was cancelled as of January 1, 1957, in accordance with its terms, by letter, dated December 17, 1956, mailed each plaintiff, prior to the respective times any loss, within the meaning of the policies, had been sustained. No reply or answer was made by the plaintiffs to this special defense. The Complaint, so far as it relates to the plaintiffs Raymond E. Norsen, Albert W. Abraham and Betty J. Carter, being Counts II, III and IV, the case having gone to trial only as to those plaintiffs, and that being the only matter with which this appeal is concerned, charged that while the respective plaintiffs were covered for maternity benefits by respective policies of insurance issued by the defendants, the plaintiffs (or the plaintiffs' wives) respectively, gave birth to children after January 1, 1957, and as a result were confined to a hospital and received medical attention, and that the defendants have refused to pay the sixty ($60) Dollars maternity benefit allegedly due each un-

317

der each policy. The jury found for the plaintiffs and assessed damages in the sum of $60 each, the defendants' motions for directed verdicts having been denied. Final judgments for those respective plaintiffs were entered on the verdicts, upon an express finding that there is no just reason for delaying appeal (Ch. 110, Ill. Rev. Stats., 1959, par. 50 (2), the post trial motions of the defendants were heard and denied, and the defendants appeal.

The defendants' theory is that the Court erred in refusing to grant the defendants' motions for directed verdict and post trial motions, because the policies had been effectively cancelled as of January 1, 1957, in accordance with their terms, prior to the time any subsequent loss, within the meaning thereof, was sustained by the respective plaintiffs under the coverage for maternity benefits, the respective births of the children having all occurred after January 1, 1957, though in each case the mothers were pregnant as of January 1, 1957.

The plaintiffs-appellees argued orally in this Court, pursuant to leave and by agreement, but filed no brief. The evidence is not set out in the abstract, but there is an agreed statement of facts to this effect:

"On December 17, 1956, plaintiffs were each covered by an individual policy of insurance issued by the defendant corporations.

"On December 17, 1956, the defendant corporations sent a letter to each of some eleven hundred policyholders covered by a like policy, informing each policyholder that as of January 1, 1957, their specific policy was cancelled in accordance with the terms and provisions of their policy. The letters were duly received by each policyholder.

"On the effective date of cancellation each of the plaintiffs (or in some instances the plaintiffs' wives) were pregnant. They subsequently gave birth to

318

children, and brought claim under the cancelled policy for pregnancy benefits."

Count II of the Complaint, relating to Raymond E. Norsen, one of the plaintiffs-appellees with which this appeal is concerned, alleged, so far as material:

" . . .

"2. That on or about January 1, 1954, in consideration of payment by the plaintiff to the defendant Blue Banner Service Agency of Two and 50/100 ($2.50) Dollars, the plaintiff was covered for accident, sickness, disease, and maternity benefits for a period of one (1) month, commencing on January 1, 1954, according to policy of insurance with said Defendants, bearing policy No. IF 21811 H.

"3. That on or about September 2, 1957, plaintiff's wife gave birth to a child. She was confined to the Rockford Memorial Hospital, and there received medical attention.

" . . .

"5. The plaintiff has duly performed all the conditions of the policy to be performed by him insofar as he has been allowed to do so by the defendants. The defendants, without cause or provocation, cancelled out the above insurance policy, when the liability under the Maternity Benefit writing had become fixed. The plaintiff at all times was willing and able to pay the further monthly premiums on said policy."

Count III, relating to Albert W. Abraham, another plaintiff-appellee here concerned, alleged, so far as material:

" . . .

"2. That on or about January 1, 1954, in consideration of payment by the plaintiff to the defendant, Blue Banner Service Agency, of Two ($2.00) Dollars, the plaintiff was covered for accident, sickness, disease, and maternity benefits for a period of one (1) month, commencing on January 1, 1954.

319

"3. That on or about February 6, 1957, plaintiff's wife gave birth to a child. She was confined to the St. Joseph's Hospital, and there received medical attention."

And paragraph 5 of that Count realleged the same matters as paragraph 5 of Count II set out above.

Count IV, relating to Betty J. Carter, the last plaintiff-appellee here concerned, alleged, so far as material:

" . . .

"2. That on or about January 1, 1954, in consideration of payment by the plaintiff to the defendant, Blue Banner Service Agency, of Four and 50/100 Dollars, the plaintiff was covered for accident, sickness, disease and maternity benefits for a period of one (1) month, commencing on January 1, 1954.

"3. That on or about July 18, 1957, plaintiff gave birth to a child. She was confined to the St. Anthony's Hospital, and there received medical attention."

And paragraph 5 of that Count realleged the same matters as paragraph 5 of Count II, set out above.

Each of the policies is a family hospital expense policy issued by the defendant Illinois Life and Accident Insurance Company to each of the plaintiffs. The policies were issued on an individual basis, for a month to month term, premiums payable in advance monthly, were renewable at the option of the company only, each providing that it took effect on a certain date, continued in force until a certain date (one month in the future), might be renewed subject to the consent of the company for further consecutive periods by payment in advance of a premium of the same amount, and unless so renewed the policy terminates as of the premium due date. Part III—Exclusions—provides that "This policy does not cover any loss caused or contributed to by . . . (2) pregnancy, childbirth or miscarriage except as provided in Part

320

II . . . ." The particular provision with which we are directly concerned appears on the second page, immediately preceding that Part III—Exclusions, and relates to maternity benefits. That provision is "Part II—Maternity Expense" and reads as follows:

"When the Insured, if a married woman, or the wife of the Insured, if a dependent, shall, while this policy is in force and after 10 months from the effective date hereof, give birth to a child or children, the Company will pay the expense actually incurred in connection therewith, not to exceed $60.00 if delivery is within a legally General operated hospital, or not to exceed $30.00 if delivery is outside of a hospital."

This action was brought under that provision to recover for expenses (not to exceed $60) incurred in childbirths occurring after January 1, 1957, but within a nine month period after January 1, 1957, which was the effective date of cancellation or non-renewal of the policies by the company, each of the mothers being pregnant on January 1, 1957.

██ The language of the policy as to non-renewal, or cancellation, reads as follows:

"Grace Period: Unless not less than five days prior to the premium due date the Company has delivered to the Insured or has mailed to his last address as shown by the records of the Company written notice of its intention not to renew this policy beyond the period for which the premium has been accepted, a grace period of thirty-one days will be granted for the payment of each premium falling due after the first premium, during which grace period the policy shall continue in force."

There is no denial and can be no real question on the record but that the insurer, in accordance therewith, did give the insureds notice of its intention not to renew the policies beyond the periods for which the premiums had been accepted. The policies therefore

terminated as of the premium due date, there was no grace period, the policies did not thereafter continue in force, and the non-renewal, or cancellation, was effective as of January 1, 1957.

The plaintiffs-appellees orally argued, in substance, that the policies gave the right to the insurer to cancel upon notice, but the insurer will not be permitted to cancel when such would operate as a fraud upon the rights of the insured. There are no facts, however, in the present record to indicate any "fraud" by the insurer, which might conceivably bar it from exercising its right to cancel or not to renew. And there are no "rights" of the insured, under the circumstances, adversely affected by the cancellation or non-renewal. The claim for indemnity here, in each case, originates, so far as material, only if the mother *"give birth to a child or children,"* at a time *"while this policy is in force,"* and is only for *"the expenses actually incurred in connection therewith,* not to exceed $60.00 if delivery is within a legally General operated hospital." No indemnity is provided for pregnancy alone as such. There must be a *birth* of a child to come within the hazard covered, and, necessarily, that must occur *while the policy is in force,* and it is only for the *expense actually incurred in connection with that birth* (with limitations as to amount) that this policy insures against. Merely because the mothers were pregnant as of January 1, 1957, does not mean that any liability of the insurer under Part II— Maternity Expense—had become fixed, or had come into existence at that time. That was not the hazard covered by this particular policy. A proper claim thereunder did not originate with or upon that event. Since the policy in each instance was admittedly properly cancelled, or not renewed, pursuant to its terms, prior to the time any of the mothers gave birth to a child or children, the insurer cannot be held liable for such loss (within the meaning of the policy) oc-

322

curring by childbirth and by the expenses in connection therewith after January 1, 1957, the effective date of cancellation or non-renewal. As of the date of cancellation, or non-renewal, the plaintiffs had no proper claims. No liability had attached prior to or at that time.

██ The usual rule of liberal construction of ambiguous provisions of insurance policies in favor of the insured must yield to rules of reasonable construction, and such does not permit the straining of plain, unambiguous language to create a supposed ambiguity where none in fact exists; where the provisions are plain and certain there is no room for construction, and the language should be taken in its plain, ordinary, popular sense: 22 Ill. Law and Pract., pp. 199–200; Thompson v. Fidelity & Casualty Co. of New York (1958) 16 Ill.App.2d 159; Craig v. Central Nat. Life Ins. Co. (1958) 16 Ill.App.2d 344; Maryland Casualty Co. v. Holmsgaard, et al. (1956) 10 Ill.App.2d 1; Steffan v. Bankers Life Co. of Iowa (1932) 267 Ill. App. 248. A valid cancellation of an insurance policy terminates the liability of the insurer for subsequent losses: 22 Ill. Law and Pract., p. 262 ff. 271; Albany City Fire Ins. Co. v. Keating (1868) 46 Ill. 394; Jablonski v. Washington County Mut. Fire Ins. Co. (1957) 13 Ill.App.2d 499. And see: Dullum v. Northern Life Ins. Co. (1942) 169 Ore. 233; Davern v. Travelers Equitable Ins. Co. (1927) 172 Minn. 19; and Kingsland v. Missouri State Life Ins. Co. (1933) 228 Mo. App. 198.

The Trial Court erred, under the circumstances, in refusing to direct a verdict for the defendants. Accordingly, the judgments are reversed and the cause remanded with instructions to enter a judgment or judgments for the defendants.

Reversed and remanded.

SOLFISBURG, P. J. and WRIGHT, J., concur.