195 So.2d 807

**BLUE CROSS–BLUE SHIELD OF ALABAMA**

**v.**

**Doris T. TURNER.**

**6 Div. 106.**

Court of Appeals of Alabama.

Aug. 16, 1966.

Rehearing Denied Dec. 13, 1966.

Clement, Rosen, Hubbard & Waldrop, Tuscaloosa, and Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

544

E. D. McDuffie and Norma Holcombe, Tuscaloosa, for appellee.

JOHNSON, Judge.

Suit was brought by appellee, Mrs. Doris T. Turner, to recover from appellant, Blue Cross–Blue Shield of Alabama, for various hospital and medical expenses incurred by appellee. The verdict and judgment for appellee was for the amount of $422.85. Appellant's motion for a new trial was overruled and the company appeals.

The appellee was the only witness called by either party. Appellee testified that she first obtained insurance from appellant eight or nine years previous to the trial. In January of 1962 her coverage was transferred from the Tuscaloosa County group to the group organized at the Central Foundry Company where the appellee's husband was employed. In March of 1962 appellee became pregnant. On July 31, 1962, appellee received notice that the group insurance plan in which she participated would be discontinued by appellant effective August 25, 1962. During the month of August the parties exchanged letters and telephone calls and in one instance appellee told an agent of appellant that she was pregnant. On December 7, 1962, appellee was admitted to Druid City Hospital in Tuscaloosa, Alabama, and on the same day gave birth to a daughter by normal delivery.

The appellee introduced two different hospital service certificates, one providing for $25.00 deductible coverage and the other providing for a $50.00 deductible coverage. Both certificates contained the same provision with respect to termination of the coverage, which certificates state:

"Option of either party—The contract between the subscriber and the corporation and all rights hereunder may be terminated by either party at any time on Thirty (30) days written notice to the other."

The bill from the hospital was in the amount of $277.35. The obstetrician's bill for prenatal care and delivery of the child was for $150.00.

Appellant contends that no liability attaches under the policy until the hospital services and benefits covered are actually rendered in the hospital. The only case cited by either party which involves similar facts is Lundquist v. Illinois Life & Accident Co., 24 Ill.App.2d 316, 164 N.E.2d 293. The policies in that case provided:

"When the Insured, if a married woman, or the wife of the Insured, if a dependent, shall, while this policy is in force and after 10 months from the effective date hereof, give birth to a child or children, the Company will pay the expense actually incurred in connection therewith * * *"

In holding that the insurance company was not liable, the Illinois court stated:

"The claim for indemnity here, * · *, originates, so far as material, only if the mother 'give birth to a child or children', at a time while this policy is in force, * * * and it is only for the expense actually incurred in connection with that birth * * * that this policy insures against."

In the case at bar the policies provide:

"SECTION V—MATERNITY CARE —$25 [$50] DEDUCTIBLE PROVISION

"In any case where benefits are provided to a member wife for maternity care and for any condition arising out of and during pregnancy, including, but not limited to, any condition or disease of the genito-urinary tract, gastritis, hyperemesis or anemia, the deductible amount specified in Sections II and III hereof to be paid by the member shall not exceed Twenty-Five (25.00) [or $50.-00] Dollars, regardless of the number of hospital admissions, during any one pregnancy, subject to the limitation herein contained of ten (10) days for each such pregnancy."

\* \* \* \* \* \*

"SECTION VII—LIMITATIONS

"1. MATERNITY CARE—Hospital service for maternity care and for any condition arising out of and during pregnancy, including, but not limited to, any condition or disease of the genito-urinary tract, gastritis, hyperemesis or anemia, shall be limited to ten (10) days for any one pregnancy."

\* \* \* \* \* \*

"SECTION VIII—WAITING PERIODS

"1. MATERNITY CARE—Hospital service for maternity care and for any condition arising out of and during pregnancy, including, but not limited to, any condition or disease of the genito-urinary tract, gastritis, hyperemesis or anemia, shall be available hereunder to a member wife only in the event she was, on the date of her hospital admission, covered by a Blue Cross hospital service contract providing maternity benefits, and, only in the event she had been covered by such a contract for a period of nine (9) consecutive months immediately preceding the date of her hospital admission; provided, however, that hospital service shall be available to a member wife covered by such a contract in the event of termination of pregnancy by abortion or miscarriage, or termination of an ectopic pregnancy, if normal delivery would have occurred on a date after the said nine (9) months waiting period."

The $50.00 deductible policy provides:

"14. 'Maternity Care' means care or treatment provided to a member who is subscriber or the wife of a subscriber, while such member is covered under a family contract, for any condition arising out of and during pregnancy, including but not limited to any condition or disease of the genito-urinary tract, gastritis, hyperemesis or anemia."

The words and phrases used in the policies in the case at bar and the policies in the *Lundquist* case, supra, can be distinguished. In the *Lundquist* case, supra, the phrase "child birth" is used to denote the event insured. In the case at bar the following words are used, "maternity care", "pregnancy", "arising out of", and "during".

Under these policies of appellant, benefits are provided not just for child birth but "for any condition arising out of and during pregnancy".

■ Pregnancy is the state of a female who has within her ovary or womb a fecundated germ. Dunglison, Dictionary of Medical Science and Literature. Necessarily, this condition begins at the moment of conception and terminates with delivery of the child.

This condition of pregnancy raised such a high probability of belief by appellee that medical and hospital expenses would be incurred that appellee repeatedly resisted the cancellation of the policy.

■ Liability of the insurer attached at the moment of the insured's conception regardless of the possibility of occurrence of events relieving it of liability. Appellee's interest in the policy was obtained through an expenditure of her and her husband's own money. This interest is sufficient to prevent cancellation or modification if such prevents the insured from timely exercise of any conversion privilege which may be available to her under the terms of the policy or, where such privilege is not given, if it prevents her from reasonably obtaining similar insurance protection on her own account elsewhere. Shears v. All State Life Ins. Co., 242 Ala. 249, 5 So. 2d 808.

Upon protest of the cancellation appellee was informed by appellant that similar coverage with appellant could not continue on a direct basis or by transferring to another payroll deduction group.

The requirement of a waiting period in most, if not in all, hospital service policies which include maternity care precluded appellee at the time her policy was cancelled from obtaining similar protection from other insurance companies.

The event insured against had happened prior to the cancellation and the insurer is not relieved from liability under the contract. The trial court did not commit error in refusing at the request of appellant the affirmative charge without hypothesis.

The verdict and judgment was in the amount of $422.85. The amended complaint alleged appellee's damages at the same amount. Why this particular amount was sued for is not understandable. If the amount of the hospital bill of $277.35 is added to the amount of the obstetrician's bill of $150.00, the total is $427.35, not $422.85. The difference is $4.50. The

obstetrician's bill is not itemized in any manner. The hospital bill contains no item for which the amount of $4.50 is charged.

■ Two separate policies were introduced into evidence by appellee. One policy was described as a $25.00 deductible, and it's date of revision was January, 1958. The other policy was described as a $50.00 deductible and its date of revision was March, 1962, and its effective date was June 1, 1962. This effective date is about two months after she became pregnant. It is reasonable to assume that the $25.00 deductible policy was in effect up to June 1, 1962, when an attempt was made to change to the $50.00 deductible policy. Payment of premium was continued after June 1, 1962, and under the terms of paragraph one of Section XII of the $25.00 deductible policy such payment was conclusive evidence of appellee's acceptance of the modification of the policy. Therefore, only the $50.00 deductible policy was in effect at the time of the attempted cancellation.

■ Section II, Part A, lists the benefits available under the policy. The list does not include charges for telephone service. Therefore, the amount of $7.00 should not be included in that part of the hospital bill for which appellant is liable.

For hospital service, appellant is only liable for the amount of $220.35. This particular amount is arrived at by reducing the hospital bill of $277.35 by $50.00 for the normal amount of deduction and by $7.00 for telephone service.

■ Paragraph I of Section II of the $50.00 deductible policy expressly excluded from the hospital service available the services of attending physicians. However, appellee's identification card stated that she was entitled to Type 4 surgical benefits which entitles her to the coverage given by Surgical Benefit Rider No. 4. This rider contained a schedule of surgical benefits which listed the various operative procedures available under the rider and

stated the maximum payment that the appellant would assume in connection with each procedure. Under the heading, "Obstetrical", the maximum payment for a normal delivery is $50.00. Since appellee will be required to remit the amount recovered for surgical benefits in excess of $50.00, there is no need to reverse the cause for the error of the trial judge in refusing to give for appellant a written charge which limited appellant's liability for surgical benefits to $50.00. Appellant's total liability can be computed by adding to the amount of $220.35 for hospital service the $50.00 for services of the attending physician. The total is $270.35.

■ Ground 14 of the motion for a new trial is based upon the refusal of the trial court to give at the request of defendant the following written charge:

"The Court charges the jury that the first written notice of cancellation Mrs. Turner received would be effective under the law of Alabama as an effective cancellation thirty days from the date Mrs. Turner received such notice regardless of the cancellation date specified in said notice."

Mrs. Turner received a written notice of cancellation on July 31, 1962. The notice stated that the Group Insurance Plan would be discontinued effective August 25, 1962. The hospital service certificate states that the contract might be terminated by either party at any time on 30 days' written notice to the other. Even if it is assumed that the written instruction requested by appellant correctly stated the applicable legal principle, yet it does not appear that appellant was harmed by the refusal to give the instruction. Whether the policy was cancelled on August 25, 1962, or 30 days after notice was received (August 30, 1962) is not an issue in this case. Therefore, the trial court did not commit reversible error by refusing to give for appellant the instruction in question.

■ Ground No. 22 of the motion for a new trial was based upon the following statement made by the trial judge in his oral charge to the jury:

"Of course, under this evidence, it would be a question for the jury to determine whether it was, under all the circumstances whether it was cancelled in order to keep from paying for births that would happen, that happened after they cancelled the policy, including this one. Of course, if the jury finds that they did, then they would certainly be justified in finding that the company would be liable, if it was a fraudulent act, them cancelling the policy."

Appellant argues that the statement hypothesizes a statement of facts which had no basis or support in the evidence.

The evidence was very clear to the effect that the appellant had a sound business reason for wishing to discontinue group coverage with the company which employed plaintiff's husband. By considering the entire oral charge of the trial judge in connection with the evidence, the statement complained of does not impress this court as being prejudicial. Protective Life Ins. Co. v. Wallace, 230 Ala. 338, 161 So. 256.

■ Ground No. 25 of the motion for a new trial states that appellee failed to prove the existence of her entire contract because her application for insurance coverage was not introduced into evidence.

Appellant in its pleading does not deny the existence of a binding contract. Therefore, the failure of appellee to introduce into evidence her application is not prejudicial to appellant.

The errors complained of are not sufficient to reverse this cause. However, the verdict and judgment is in excess of the legally proved damages. Therefore, the cause is affirmed upon condition that appellee, within thirty days from the date

**548**

hereof, file a remittitur of all damages in excess of $270.35. Otherwise, this cause will be reversed and remanded for new trial.

Affirmed conditionally.

On Rehearing

JOHNSON, Judge.

Appellant admits that appellee was relieved of the burden of proving the execution of her contract since appellant did not deny it by a sworn plea as required by Tit. 7, Sec. 375, Code of Alabama, 1940.

Appellant's contention is that appellee failed to prove the existence of her application of insurance and that the application is an essential element of plaintiff's prima facie case. For authority appellant cites Southern Life & Health Ins. Co. v. Whitfield, 238 Ala. 243, 190 So. 276, wherein it is stated:

> "The plea was the general issue in short by consent, with leave to present any defense available by special plea and leave to plaintiff to present any matter available by special replication.
>
> "[1] This plea put in issue the existence of the policy alleged in the complaint; and cast on plaintiff the burden of proof in that regard. National Life & Accident Ins. Co. v. Winbush, 215 Ala. 349, 110 So. 571; Life Ins. Co. of Virginia v. Mann [28 Ala.App. 425] 186 So. 583."

In the Winbush case cited in the Whitfield case, it is stated:

> "Plaintiff, to establish a prima facie case, must prove: (1) The existence of the contract or policy sued on; (2) the death of the insured or the happening of the event provided for in the policy; and (3) the giving of notice and proof of death, as required by the policy."

Appellant's contention relates only to element number one, i.e., "The existence of the contract or policy sued on."

■ It is only where there is no evidence tending to establish the plaintiff's case that the court may direct a verdict for defendant; and in considering the propriety of the affirmative charge, we review the tendencies of the evidence most favorable to the plaintiff, regardless of any view we may have as to the weight of the evidence. United Ins. Co. of America v. Ray, 275 Ala. 411, 155 So.2d 514.

■ Some of the evidence more favorable to appellee was that at the time appellant attempted to cancel the policy, appellee had been pregnant several months. She was told that she could not continue her coverage by transferring to another group and she could not pick up new coverage because of the "condition"; that she had been a paying subscriber for eight or nine years; that one of the provisions of the policy stated:

> " 'Maternity care' means care or treatment provided to a member who is subscriber or the wife of a subscriber, while such member is covered under a family contract, for any condition arising out of and during pregnancy, including but not limited to any condition or disease of the genito-urinary tract, gastritis, hyperemesis or anemia.";

that the only defense presented by appellant was its attempted cancellation of the policy which attempt was held to be ineffective by this court in the original opinion.

■ The evidence when considered most favorable to appellee does certainly furnish "a mere glimmer, spark or smallest trace" in support of the issue of the existence of the contract. This is true even if appellee was held bound by the very ambiguous provision of the hospital service certificate which defines "contract". The $25.00 deductible policy states under the headings, "TERMS AND CONDITIONS. SECTION I—DEFINITIONS: WHEN USED HEREIN" that:

"2. 'Contract' means this certificate and all riders and endorsements, thereto, if any, which together with the subscriber's application and the subscriber's identification card, constitutes the entire contract between the Corporation and the subscriber."

There is no authority cited which requires a plaintiff to present all of the evidence in support of a particular element of his cause of action. This is true despite the case of Provident Life & Accident Ins. Co. v. Pressley, 37 Ala.App. 153, 64 So.2d 618, wherein the certificate issued to the employee provided in plain and specific terms that it was issued subject to the terms and conditions of the group policy issued to the employer.

Considering the evidence most favorable to appellee, the trial court did not err in refusing to give the requested affirmative charges.

Application overruled.

CATES, Judge (concurring specially).

I would not rely on Shears v. All States Life Ins. Co., 242 Ala. 249, 5 So.2d 808, because of its being later restricted by Hill v. Metropolitan Life Ins. Co., 266 Ala. 285, 96 So.2d 185. Also, I doubt that Mrs. Turner had a "group policy" since there is no proof of her employer being in privity of contract with Blue Cross–Blue Shield. See Blue Cross–Blue Shield v. Fowler, 43 Ala. App. 572, 195 So.2d 910.

Pennsylvania Cas. Co. v. Perdue, 164 Ala. 508, 51 So. 352, should control this case.

I agree with Judge Johnson that here conception eo instanti fixed liability at least as to maternity benefits.

Aside from our statute [1] making certain kinds of abortion misdemeanors, public policy in this State does not (and probably cannot [2]) prohibit planned parenthood.

Section IV, subsection 2 (Maternity Care), of the Certificate prescribes that the wife must have been covered for the nine consecutive months just before her confinement.

Mrs. Turner's identification card bears a notation (R. 36). "All waiting periods completed."

When husband and wife plan parenthood so as to abide by the policy waiting period, it is clear to me that enlightened self-interest has afforded the insurer an opportunity to plan its premiums with an actuarial loading factor to prepay the hospital service.

Also, it is to be noted that the provision for maternity care also covers pregnancy foreshortened by abortion or miscarriage. It would be ironic to say that if Mrs. Turner were to have had a miscarriage before September 16, 1962, Blue Cross–Blue Shield would have been liable; whereas, if when she goes to full term, the policy has lapsed by virtue of cancellation.

I think such an intent would have to be expressed in specific words so that the subscriber would be fully aware of how tenuous his (or her) coverage is.

1. Code 1940, T. 14, § 9, as amended, which exempts cases needful for the woman's "life or health."

2. Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510.