389 So.2d 920 (1980)
GULF GUARANTY LIFE INSURANCE CO.
v.
Olivette KELLEY, Individually and as Executrix of Estate of John R. Kelley, Deceased.
No. 52005.
Supreme Court of Mississippi.
October 29, 1980.
Rehearing Denied November 12, 1980.
Opinion on Motion to Retax Costs January 7, 1981.
Fred Krutz, III, W. Scott Welch, III, Luther T. Munford, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellant.
Ransom P. Jones, III, F. Gerald Maples, Jones & Maples, Pascagoula, for appellee.
En Banc.
*921 SUGG, Justice, for the Court:
Mrs. Olivette Kelley, individually and as Executrix of the Estate of John R. Kelley, Deceased, filed suit in the Circuit Court of George County against the defendant, Gulf Guaranty Life Insurance Company. The trial court instructed the jury to find for plaintiff actual damages in the amount of $3,926.88, and submitted the question of punitive damages to the jury. The jury awarded $35,000 punitive damages. Defendant appealed from the judgment rendered against it for $38,926.88.
Two questions are presented on this appeal. (1) Was plaintiff entitled to a peremptory instruction on the issue of actual damages? (2) Was the defendant entitled to a peremptory instruction on the issue of punitive damages?

I

FACTS
There is no substantial dispute as to the material facts of this case. On June 28, 1975 John R. Kelley purchased an automobile and financed the purchase by a loan in the amount of $3,926.88 from the First National Bank of Lucedale. As additional security for the loan, and as part of the transaction, a certificate of credit life insurance, naming the First National Bank of Lucedale as beneficiary, was issued by defendant on Kelley's life. For a separate premium, health and accident insurance was also provided. The certificate of credit life insurance issued to Kelley provided, among other things, the following:
Gulf Guaranty Life Insurance Company hereby certifies that under and subject to the terms and conditions of this certificate and of the master group credit life and/or accident and health insurance policy issued to the creditor named herein, the insured debtor, is insured... . No coverage shall exist whether indicated or not which is not expressly granted under the master policy issued to the creditor.

The master policy issued to the creditor contained the following provision:
18. The company may, within ninety (90) days from date of issue of a certificate to a borrower ... cancel the insurance on the life of such borrower five (5) days after written notice has been mailed to the creditor together with the company's check for the unearned portion of the premium actually paid therefor.
It was stipulated that Kelley was examined by his personal physician on June 24, 1975 and was found to be in good health. This examination was not related to the issuance of the credit life certificate in this case, but the certificate was issued without requiring a physical examination of the insured, Kelley.
On July 1, 1975, while the policy was in force, Kelley suffered a heart attack and was hospitalized. Defendant learned of this on July 18, 1975. No one knew or could know that the heart attack would prove fatal. Defendant, acting under the provisions of the master policy, canceled the policy and notified the bank which was the named beneficiary by mail, and refunded the unearned premium. Kelley remained in the hospital as a result of his heart condition and died on July 24, 1975. Following some correspondence between Mrs. Kelley's attorney and the defendant, the present suit was filed.
The provisions of the policy in question were approved by the Mississippi Insurance Commission as required by section 83-7-17 Mississippi Code Annotated (1972).

II

WAS PLAINTIFF ENTITLED TO A PEREMPTORY INSTRUCTION ON THE ISSUE OF ACTUAL DAMAGES?
Plaintiff takes the position that the master policy was a "secret policy" and argues that the provisions under which defendant retained the right to cancel at its election were not binding on Kelley.
Plaintiff relies on Seymore v. Greater Mississippi Life Insurance Company, 362 So.2d 611 (Miss. 1978) in support of her contention that the master policy in this case was a "secret policy." Seymore was a *922 case in which the authority of the insurer's agent was limited as to the amount of insurance the agent was permitted to write. Notwithstanding the limitation, the agent issued the policy in an amount which exceeded his authority. The insurance company did not plead as an affirmative defense that the master policy limited the agent's authority; consequently, we held the trial court erred when it denied recovery because the policy exceeded the agent's authority as to amount.
The use of master policies, in cases of credit life insurance, is neither new nor unusual but is a procedure commonly used. In such cases the insured is given a certificate, as Kelley was in this case, referring him to the master policy for the terms and conditions of the insurance contract. The insured has the right to examine the master policy if he should desire to do so. He may not neglect or purposely omit acquainting himself with the terms and conditions of the insurance policy and then complain of his ignorance of them. We reject the "secret policy" argument as untenable.
Defendant argues it had the absolute right under the terms of its master policy to cancel the certificate of insurance issued to Kelley within 90 days from the date of issue. Ordinarily, this defense would be upheld; however, in this case the onset of Kelley's fatal illness occurred after the policy was in effect and continued without remission until his death. Considerations of public policy persuade us that, exercise by the insurer of its right to cancel should not be permitted after the onset of a fatal illness and death therefrom, upon the ground of estoppel. In Volume 3A of Appleman's Insurance Law and Practice, ¶ 1813, the author states:
And where the company has accepted the premium on a policy and the insured has relied on its protection, the company is estopped to cancel the policy after the insured has reached such a physical condition that he cannot obtain desirable insurance on his life in any reputable company. [Mutual Benefit Life Ins. Co. v. Robison, C.A. Iowa 1893, 54 F. 580, 598].
We hold that, on the grounds of public policy, defendant was estopped from canceling the policy after the onset of Kelley's fatal illness. In so holding, we are not unmindful of the constitutional protection of the obligation of contracts afforded by Article 1 Section 10 of the United States Constitution. Allowing defendant to cancel the policy after Kelley became uninsurable would be unconscionable because Kelley had then reached such a physical condition that he was unable to obtain desirable insurance in any reputable company before his death.
We conclude that the result reached by the trial judge, upon undisputed evidence, directing a verdict for plaintiff for the amount necessary to pay the balance of the loan, as actual damages, was correct and will be affirmed.

III

WAS THE DEFENDANT ENTITLED TO A PEREMPTORY INSTRUCTION ON THE ISSUE OF PUNITIVE DAMAGES?
Punitive damages are not recoverable for breach of contract unless such breach is attended by intentional wrong, insult, abuse, or such gross negligence that amounts to an independent tort. Aetna Casualty and Surety Company v. Steele, 373 So.2d 797 (Miss. 1979); Bellefonte Insurance Company v. Griffin, 358 So.2d 387 (Miss. 1978); New Hampshire Insurance Company v. Smith, 357 So.2d 119 (Miss. 1978); Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239 (Miss. 1977); Progressive Casualty Insurance Company v. Keyes, 317 So.2d 396 (Miss. 1975).
In Veal, supra, we affirmed an award for punitive damages for failing to pay a legitimate claim following the death of an insured, but held that if an insurance company had a legitimate or arguable reason for failing to pay a claim, punitive damages would not lie.
In this case defendant denied liability on the ground that it had cancelled the certificate issued Kelley before his death *923 and that it had the absolute right to cancel the certificate under the terms of its master policy. Our holding in this case under Part II that defendant was estopped from asserting the cancellation provision of its master policy is the first time this Court has addressed the question.
Defendant had the right to interpose its defense, and although we have decided defendant was liable on its policy, we conclude there was an arguable reason for failing to pay the claim; therefore, the question of punitive damages should not have been submitted to the jury. The trial court should have granted a peremptory instruction for the defendant on the question of punitive damages.
For the reasons stated, we affirm the judgment of the trial court awarding actual damages in the amount of $3,926.88, and reverse on the question of punitive damages, holding that the action of defendant was not attended by an intentional wrong, insult, abuse, or such gross negligence that it amounted to an independent tort.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., ROBERTSON, P.J., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
SMITH, P.J., takes no part.