**Jerry T. BUTLER and Jennifer L. Butler, Plaintiffs,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

**Civ. A. No. H84–0242(R).**

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Sept. 11, 1985.

Robert F. Drake, Hattiesburg, Miss., Thomas L. Casey, Laurel, Miss., for plaintiffs.

Kenna L. Mansfield, Jr., Jackson, Miss., for defendant.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

This cause is presently before the Court on cross-motions for summary judgment.

The plaintiffs, husband and wife, seek to recover certain amounts alleged to be due under a group insurance policy issued by the defendant, together with punitive and other extra-contractual damages. The plaintiffs argue that their position is supported by the public policy articulated by the Mississippi Supreme Court in *Brown v. Blue Cross and Blue Shield of Miss.*, 427 So.2d 139 (Miss.1983), *Gulf Guaranty Life Ins. Co. v. Kelley*, 389 So.2d 920 (Miss. 1980), and *Locomotive Engineers' Mutual Life & Accident Ins. Co. v. Meeks*, 157 Miss. 97, 127 So. 699 (1930). The defendant attempts to distinguish the above cases, argues that Mississippi law has been superseded by federal law, and asserts alternatively that the defendant is not liable for any punitive or extra-contractual damages.

The facts of this case are relatively simple. Prior to January 12, 1984, plaintiff, Jerry T. Butler, was an employee at DAPSCO, Inc. ("DAPSCO") in Laurel, Mississippi. On October 1, 1977, the defendant issued its Group Policy No. H206 ("the policy") to DAPSCO, as policyholder, insuring certain employees of DAPSCO and their dependents according to the terms and provisions of the policy. The group policy as issued to DAPSCO was amended, effective May 25, 1979, to comply with Pregnancy Discrimination Amendment, to Title VII of the Civil Rights Act of 1964. Insurance coverage for Jerry T. Butler, including maternity benefits for Jennifer L. Butler, became effective on December 18, 1981. Monthly premiums were withheld from Jerry T. Butler's payroll checks for his dependent's coverage.

In August of 1983, Jennifer L. Butler was initially diagnosed as being pregnant. She visited her doctor on several occasions in connection with her pregnancy from August, 1983 through January 12, 1984. The defendant fully paid all claims submitted for pregnancy incurred prior to January 12, 1984. On January 12, 1984, Jerry T. Butler was laid off from his employment at DAPSCO due to lack of work. On April 11, 1984, Jennifer Butler gave birth to a child, approximately seventy (70) days subsequent to the termination of Jerry Butler's employment and the termination of his coverage under the group policy.

The defendant's position is that plaintiffs' claims were not covered under the terms of the policy, and it declined to pay any amount for pregnancy related expenses incurred subsequent to the termination of Jerry Butler's employment. The group policy was not cancelled either by DAPSCO or by the defendant. In fact, the group policy remains in full force and effect insuring the employees of DAPSCO.

The policy provision in question provides that the coverage of an employee and an employee's insured dependents terminates upon the termination of his employment with DAPSCO, as follows:

> The insurance with respect to any individual employee shall terminate as the earliest date determined in accordance with the following provisions:
>
> \*  \*  \*  \*  \*  \*
>
> (f) The date the employee's active employment with the group policyholder is terminated, . . . ."

The policy does not contain any provision for the payment of pregnancy related expenses subsequent to the termination of Jerry Butler's coverage. The policy defines the term "illness" as including pregnancy or pregnancy related conditions. Therefore, pregnancy is treated on the same basis as any other illness under the terms of the policy. The policy's insuring clause specifies that benefits are payable only for expenses relating to an illness or injury, as those terms are defined in the policy, and that the expense must be incurred while the insured individual is covered under the policy.

The plaintiffs contend that defendant is precluded from termination of the plaintiff's coverage for pregnancy related expenses based upon the public policy of this State as espoused in *Brown v. Blue Cross & Blue Shield of Miss.*, 427 So.2d 139 (Miss.1983), *Gulf Guaranty Life Ins. Co. v. Kelley*, 389 So.2d 920 (Miss.1980), and

*Locomotive Engineers Mutual Life & Accident Ins. Co. v. Meeks*, 157 Miss. 97, 127 So. 699 (1930). In *Brown*, Jerry Brown was employed by Corr-Williams Tobacco Company. Brown's employer had in effect a group policy with Blue Cross which covered maternity benefits. The Browns, relying upon such coverage, planned and conceived a child in October, 1975, after the required waiting period had expired. Mrs. Brown gave birth to a son in July, 1976, resulting in medical and hospital expenses. In February, 1976, the employer had terminated its group policy with Blue Cross without notification or consultation with the Browns. The replacement policy carried no maternity benefits and the cancellation precluded the Browns from obtaining adequate insurance. It was Blue Cross' position that it had a contractual right to terminate all benefits under the policy without consideration to the beneficiaries who made plans in reliance thereon and had irrevocably committed themselves to incur expenses for which they anticipated at least partial payment under the policy. The Mississippi Supreme Court dispelled Blue Cross' contention relying primarily upon the *Gulf Guaranty* decision.

In *Gulf Guaranty*, the insured procured a credit life insurance policy through a Lucedale bank on June 28, 1975. He suffered a heart attack on July 1, 1975. The insurance company learned of the heart attack on July 18, 1975, and cancelled the policy relying upon its contract language which gave the insurance company the absolute right to cancel at any time within ninety (90) days from the date of issue. The Mississippi Supreme Court recognized the contractual rights of the insurance company to cancel the policy, but held Gulf Guaranty was estopped to cancel as a matter of public policy:

> Defendant argues it had the absolute right under the terms of its master policy to cancel the certificate of insurance issued to Kelley within 90 days from the date of issue. Ordinarily, this defense would be upheld; however, in this case the onset of Kelley's fatal illness occurred after the policy was in effect and continued without remission until his death. Considerations of public policy persuade us that, exercise by the insurer of its right to cancel should not be permitted after the onset of a fatal illness and death therefrom, upon the ground of estoppel. In Volume 3A of Appleman's Insurance Law and Practice, ¶ 1813, the author states:

>> And where the company has accepted the premium on a policy and the insured has relied on its protection, the company is estopped to cancel the policy after the insured has reached such a physical condition that he cannot obtain desirable insurance on his life in any reputable company. [*Mutual Benefit Life Ins. Co. v. Robison*, C.A. Iowa 1893, 54 F. 580, 598].

*Gulf Guaranty Life Ins. Co. v. Kelley*, 389 So.2d at 922.

Getting back to the *Brown* case, the court went on to reverse and remand the case for trial on the merits with consideration to the public policy set forth in *Gulf Guaranty*. The Court in *Brown* also noted in footnote that "liability might be predicated" upon an Alabama decision, *Blue Cross-Blue Shield of Alabama v. Turner*, 43 Ala.App. 542, 195 So.2d 807 (1966) *cert. denied* 280 Ala. 709, 195 So.2d 814 (1967) wherein the Alabama Court of Appeals held in pertinent part that

> [l]iability of the insurer attached at the moment of the insured's conception, regardless of the possibility of occurrence of events relieving it of liability. Appellee's interest in the policy was obtained through an expenditure of her and her husband's own money. This interest is sufficient to prevent cancellation or modification if such prevents the insured from timely exercise of any conversion privilege which may be available to her under the terms of the policy or, where such privilege is not given, if it prevents her from reasonably obtaining similar insurance protection on her own account elsewhere.

*Turner, supra*, 43 Ala.App. at 546, 195 So.2d at 810.

■ The plaintiffs contend that they were economically precluded from exercising their conversion privilege and were likewise precluded from obtaining any maternity benefits coverage elsewhere. The defendant asserts that Jerry T. Butler was notified of his right to convert his coverage under the group policy to an individual policy of insurance and cites his deposition which corroborates the assertion. A question remains, however, as to the cost of the premium for the conversion policy and also the extent of coverage provided by the conversion policy, i.e., whether the plaintiffs were able to obtain reasonably similar insurance protection.

Rule 56(c) authorizes summary judgment only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence presented in a light most favorable to the party opposing the motion, resolving all doubts in any of the facts against the movant. *Breen v. Centex Corp.,* 695 F.2d 907 (5th Cir.1983). The Court is limited to an inquiry into whether a genuine issue of material fact remains for trial "'so as to insure that factual issues will not be [decided] without the benefit of the truth-seeking procedures of a trial.'" *Southern Distributing Co. v. Southdown, Inc.,* 574 F.2d 824, 826 (5th Cir.1978), *quoting from Jackson Tool & Die, Inc. v. Smith,* 339 F.2d 88, 91 (5th Cir.1964). Whether the Court is of the opinion that the movant's set of facts are more believable or convincing, or that he is more likely to prevail on the merits is of no moment. *Jones v. Western Geophysical Co. of America,* 669 F.2d 280 (5th Cir. 1982). "If reasonable minds might differ on the resolution of any material fact or even on the inferences arising from the undisputed facts, summary judgment must be denied." *Anthony v. Petroleum Helicopters, Inc.,* 693 F.2d 495, 496 (5th Cir. 1982); *Impossible Electronics Techniques,*

*Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982).

The facts thus far presented to the Court as to the issue of ultimate liability under the contract of insurance remain unsettled. Therefore, the Court will refrain from the granting of summary judgment on the issue of liability. On the other hand, the Court feels the resolution of the issue of punitive damages involves no factual determinations and is merely a question of law.

■ The awarding of punitive damages should be allowed only within narrow limits since they are assessed as an example and warning to others. *Standard Life Ins. Co. of Indiana v. Veal,* 354 So.2d 239, 247 (Miss.1978). In the recent Mississippi Supreme Court case of *State Farm Fire and Casualty Co. v. Simpson,* 477 So.2d 242 (1985), the Court reviewed its previous decisions concerning punitive damages. In general, the longstanding rule in this jurisdiction is that punitive damages are not recoverable for the breach of contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort. *Simpson* citing *Lincoln Nat. Life Ins. Co. v. Crews,* 341 So.2d 1321, 1322 (Miss.1977); *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396, 398 (Miss.1975); *Seals v. St. Regis Paper Co.,* 236 So.2d 388, 392 (Miss.1970); *Fowler Butane Gas Co. v. Varner,* 244 Miss. 130, 150–51, 141 So.2d 226, 233 (1962); *D.L. Fair Lumber Co. v. Weems,* 196 Miss. 201, 221–22, 16 So.2d 770, 773 (1944); *American Ry. Express Co. v. Bailey,* 142 Miss. 622, 631, 107 So. 761, 763 (1926); and *Hood v. Moffett,* 109 Miss. 757, 767, 69 So. 664, 666 (1915).

■ Of course, the denial of an insurance claim does not in itself support a subsequent claim for punitive damages. If an insurance company is found to have an arguable reason in not paying a claim, punitive damages will not lie. *Blue Cross & Blue Shield of Mississippi, Inc. v. Campbell,* 466 So.2d 833, 842 (Miss.1984); *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803 (Miss.1983); *Consolidated American Life*

*Ins. Co. v. Toche,* 410 So.2d 1303 (Miss. 1982).

In addressing the term "arguable reason" and the actual required severity of an insurer's conduct to sustain a claim for punitive damages, the Mississippi Supreme Court in *Simpson,* p. 250, stated:

> The term 'arguable reason' does not diminish the rule regarding the resolution of punitive damages because the assessment is no different in 'bad faith' cases than in other punitive damages cases. *Standard Life v. Veal, supra,* provides that punitive damages will not lie if the carrier has an arguable reason for denying the claim. It does not necessarily follow, however, that punitive damages are mandated by the absence of an 'arguable reason'. This is so because the denial of a claim could be the result of an honest mistake or oversight—ordinary or simple negligence—not reaching the heightened status of an 'independent tort' as set out in *Veal, supra,* and other cases.

> \*   \*   \*   \*   \*   \*

We are of the opinion the term 'legitimate or arguable reason', although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit. *Lincoln Nat'l. Life Ins. Co., supra.*

This is only to say that not all denied claims constitute the gross, wanton or intentional conduct essential to the creation of an independent tort for which punitive damages will lie. The mere fact that Lincoln rejected the claims under the provisions of its policy and defended the suit and lost does not justify

imposition of punitive damages,' *Lincoln National Life Ins. Co. v. Crews,* 341 So.2d at 1322. *And see Blue Cross & Blue Shield of Miss. v. Campbell, supra; Bellefonte Ins. Co. v. Griffin,* 358 So.2d 387 (Miss.1978).

■ In the case at bar, the defendant has denied coverage under their group policy based upon a valid policy provision. Neither *Brown* nor *Gulf Guaranty* held that cancellation provisions based upon an employee's termination of employment were invalid. Those cases merely held that public policy considerations in certain circumstances estop an insurance company from cancelling their policy. Furthermore, the court in *Brown* stated that "[i]t will be for the determination of the trial court, following a hearing on the merits, as to liability under the contract, or whether the principles enunciated herein are applicable to this case. We only decide in this opinion that the declaration stated a cause of action." *Brown, supra,* 427 So.2d at 141. The court thus dodged a firm rule of law holding that as a matter of law Blue Cross was estopped from assertion of their cancellation provisions. Similarly, while denying to uphold Blue Cross' cancellation provisions based upon public policy, the court stated in footnote 2 that "liability *might be* predicated under *Blue Cross-Blue Shield of Alabama v. Turner,* 43 Ala.App. 542, 195 So.2d 807 (1966) *cert. denied,* 280 Ala. 709, 195 So.2d 814 (1967), ..." *Brown supra,* 427 So.2d at 141. This Court cannot hold that the defendant lacked an arguable reason based upon such ambiguous language. The defendant had an arguable reason for not paying the claim. Therefore, the plaintiffs' claims for punitive damages will not lie.

■ Finally, the defendant has raised one other contention which needs to be addressed. The defendant contends that Mississippi law is superseded by federal law in this case. The defendant asserts that should Mississippi law be applied to this case, the result would be inconsistent with the provisions of Title VII, which include by virtue of the Pregnancy Discrimi-

nation Amendment ("PDA"), discrimination on the basis of pregnancy. 42 U.S.C. § 2000e–2(a); 42 U.S.C. § 2000e(k). The analysis begins with Title VII's preemption provisions, 42 U.S.C. § 2000e–7 and 42 U.S.C. § 2000h–4.

> Nothing in this subchapter shall be deemed exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be *unlawful* employment practice under this subchapter.

42 U.S.C. § 2000e–7 (emphasis supplied).

> Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is *inconsistent* with any of the purposes of this Act, or any provision thereof.

42 U.S.C. § 2000h–4 (emphasis supplied).

The reach of Title VII's preemption provisions is narrow. *California Federal Savings & Loan Ass'n v. Guerra,* 758 F.2d 390, 394 (9th Cir.1985). "Title VII does not itself prevent States from extending their nondiscrimination laws to areas not covered by Title VII...." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The question thus presented is whether the public policy embraced by the Mississippi Supreme Court in *Brown* and *Gulf Guaranty* is "unlawful" under or "inconsistent" with Title VII.

The defendant puts forth a hypothetical man who contracts diabetes and asserts that there would be no question that a medical expense for his diabetic condition incurred seventy (70) days after termination of his employment would not be payable under the policy even though the diabetes may have had its inception while this man was covered under the policy.

The Court could not argue with such an assertion. However, take the hypothetical man who contracts a hypothetical ailment; begins treatment with the expectation that the treatment *will end* with an operation within three months; and is then terminated prior to that operation. Would not this Court apply the same criteria and same considerations as set out in *Brown* and *Gulf Guaranty?* The answer surely would be in the affirmative. The defendant seeks to compare the long-term disease of diabetes with the nine month pregnancy, a comparison of apples with oranges. The Court fails to see any unlawfulness or inconsistencies with Title VII in the application of Mississippi public policy considerations to a question of liability under the group policy in question.

In conclusion, the Court denies the plaintiffs' motion for partial summary judgment and grants the defendant's motion for summary judgment in part as to the plaintiffs' claim for punitive damages.

An Order in accordance with this Opinion shall be provided as set forth in the Local Rules.