**Frances C. WHEELER,**
**Plaintiff–Appellee,**

v.

**DYNAMIC ENGINEERING,**
**INCORPORATED, Defendant–Appellant,**

**and**

**Office of Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), Defendant. (Two Cases.)**

**Nos. 94–1587, 94–1996.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 1, 1995.

Decided Aug. 16, 1995.

**ARGUED:** Robert Jon Barry, Kaufman & Canoles, Norfolk, VA, for appellant. Robert Edward Hoskins, Foster & Foster, Greenville, SC, for appellee. **ON BRIEF:** Richard C. Mapp, III, Laura G. Gross, Kaufman & Canoles, Norfolk, VA, for appellant. Timothy G. Clancy, Cumming, Hatchett, Moschel & Patrick, Hampton, VA, for appellee.

Before MICHAEL and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed by published opinion. Judge MICHAEL wrote the opinion, in which Judge MOTZ and Senior Judge PHILLIPS joined.

## OPINION

MICHAEL, Circuit Judge:

Dynamic Engineering, Inc. maintains an employee health care plan pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. Frances Wheeler (Wheeler), whose husband is employed by Dynamic, seeks to recover the costs of her breast cancer treatment from this plan. Following a two-day bench trial, the district court (1) enjoined Dynamic to pay the costs of Wheeler's treatment and (2) awarded Wheeler attorneys' fees and costs. Dynamic appeals both of these rulings. We first conclude that Dynamic's amendment of its health care plan did not relieve it of liability for Wheeler's medical expenses: because Wheeler had begun a four-step treat-

ment procedure prior to the amendment, she had established coverage for that treatment under the old plan. Second, we conclude that the district court did not abuse its discretion in awarding Wheeler attorneys' fees and costs. We therefore affirm.

## I.

Wheeler, a fifty-one-year-old woman, is married to Terry Wheeler, an employee of Dynamic Engineering. Since 1987, Mr. Wheeler has participated in a self-funded ERISA health care plan that Dynamic provides to its employees and their families. During calendar year 1993, E & E Benefit Plans functioned as Dynamic's claims administrator and reinsurer. James Marchesani, an employee of Dynamic, served as the plan administrator.

In November 1993 Wheeler was diagnosed as having Stage IV breast cancer. Her treating physician advised her that her best chance for survival was to undergo high dose chemotherapy with peripheral stem cell rescue (HDC/PSCR). High dose chemotherapy involves administering the same chemotherapeutic agents used in standard chemotherapy but at higher dosages. The procedure involves four steps: (1) the administration of standard doses of chemotherapeutic agents, (2) the administration of Taxol, (3) the administration of Cytoxan and VP–16, and (4) the administration of high dosages of chemotherapeutic agents with peripheral stem cell rescue. The entire procedure takes about five months.[1]

The parties stipulated that HDC/PSCR was covered under the 1993 health care plan. Wheeler submitted a claim for coverage for the HDC/PSCR procedure to Dynamic on December 13, 1993, and began the first stage of HDC/PSCR on December 15. The second stage, the administration of Taxol, commenced on March 14, 1994.

In late 1993 Marchesani began to consider changing reinsurers and claims administra-

tors. By early December he had decided to enter into a new reinsurance contract with Blue Cross/Blue Shield of Virginia. He also decided to adopt a new health care package designed by Blue Cross, called "Key Care II." On December 17, 1993, a Blue Cross representative held an orientation meeting for Dynamic employees to describe the modifications to Dynamic's health plan, which were to become effective on January 1, 1994. Dynamic signed the new reinsurance contract with Blue Cross on March 4, 1994, and filed a new summary plan description with the Secretary of Labor on April 1, 1994.

The Key Care II plan specifically excluded HDC/PSCR. Dynamic claims that the new plan became effective on January 1, 1994. Accordingly, on January 28, 1994, Dynamic informed Wheeler that her claim for coverage was denied. Wheeler sued, seeking a declaratory judgment that she was entitled to coverage for her HDC/PSCR treatment. The district court found that Wheeler had established coverage under the 1993 plan and that the subsequent amendment of the plan could not apply retroactively to deny her claim.[2] It ordered Dynamic to pay Wheeler attorneys' fees and costs totalling approximately $9,000. Dynamic now appeals.

## II.

### A.

■ Dynamic claims that Wheeler is not entitled to coverage for HDC/PSCR because it amended its plan to eliminate this coverage before Wheeler underwent her treatment.

■ Welfare benefits plans, including health care plans, are exempt from the statutory vesting requirements that ERISA imposes on pension benefits. *See* 29 U.S.C. §§ 1002(1), 1051(1). Accordingly, an employer may amend the terms of a welfare benefit plan or terminate it entirely. *Gable v. Sweetheart Cup Co., Inc.,* 35 F.3d 851, 855 (4th Cir.1994); *Sejman v. Warner–Lambert Co.,* 889 F.2d 1346, 1348 (4th Cir.1989). Howev-

---

**1.** The record indicates that the standard dose phase lasts no more than 12 weeks, the Taxol phase six weeks, the Cytoxan/VP–16 phase four days, and the high dose phase three days.

**2.** The district court also found the Office of Civilian Health and Medical Programs of the Uniformed Services (CHAMPUS) secondarily liable for Wheeler's coverage. CHAMPUS has not pursued an appeal of this ruling.

er, benefits under a welfare benefit plan may vest under the terms of the plan itself. *Gable,* 35 F.3d at 855; *Wulf v. Quantum Chemical Corp.,* 26 F.3d 1368 (6th Cir.1994). Dynamic claims to have amended its plan effective January 1, 1994, to eliminate coverage for HDC/PSCR. Without deciding the issue, we will assume arguendo that the amendment was effective January 1.[3] Nevertheless, we must determine whether Wheeler's coverage vested under the terms of the 1993 plan. If it did, any amendment occurring thereafter could not apply retroactively to deny coverage that had already vested. *Confer v. Custom Eng'g Co.,* 952 F.2d 41 (3d Cir.1991). Accordingly, the 1994 amendments would have no effect on Wheeler's coverage for HDC/PSCR.

■ By denying coverage to Wheeler, Dynamic in effect concluded that coverage did not vest under the 1993 plan. Because the 1993 plan does not expressly give the administrator the discretion to interpret it, we review Dynamic's interpretation de novo. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). We interpret an ERISA health insurance plan under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense. *Hardester v. Lincoln Nat. Life Ins. Co.,* 33 F.3d 330, 338 (4th Cir.1994) (Hall, J., dissenting), *vacated on reh'g,* 52 F.3d 70 (4th Cir.1995) (en banc) (adopting panel dissenting opinion). Where a term is ambiguous, we must construe it against the drafter, *id.,* and in accordance with the reasonable expectations of the insured, *Saltarelli v. Bob Baker Group Medical Trust,* 35 F.3d 382, 386 (9th Cir.1994). While we interpret an ERISA plan under federal common law, we may use principles of state common law to guide our analysis.

■ Coverage under a medical insurance policy or plan is normally triggered by one of two events. If a policy insures against

illness, coverage for all medical costs arising from a particular illness vests when the illness occurs. *Buell v. Security General Life Ins. Co.,* 987 F.2d 1467, 1469 (10th Cir.1993) (applying Colorado law). If a policy insures against expenses, coverage vests when the expenses are incurred. *Id. See also Mote v. State Farm Mut. Auto. Ins. Co.,* 550 N.E.2d 1354, 1356–57 (Ind.App.1990) (collecting cases); *see generally* Thomas Goger, Annotation, *Elimination of Particular Coverage, or Termination, of Health, Hospitalization, or Medical Care Insurance Policy as Affecting Insurer's Liability for Insured's Continuing Hospitalization or Medical Expenses Relating to Previously Covered Illness,* 66 A.L.R.3d 1205 (1975).

■ With these principles in mind, we turn to Dynamic's 1993 health care plan. Dynamic relies on the "Termination of Coverage" provision, which reads:

### TERMINATION OF COVERAGE

Except as specified in the Continuation of Coverage provisions all benefits under this Plan will terminate on the earliest of:

a. the date this Plan terminates. . . .

This provision, Dynamic argues, relieves it of all obligations under the 1993 plan on the date that plan was replaced with the Key Care II plan. We agree that this provision indicates that the plan insures against expenses rather than illness. However, it does not relieve Dynamic of the obligation to reimburse expenses that were *incurred* during the term of the 1993 policy. For example, if Wheeler had incurred an expense on December 31, 1993, and submitted a claim for that expense on January 1, 1994, Dynamic would be obligated to pay that claim if it were covered under the 1993 plan.[4] In short, we read this provision, as its title indicates, as providing for the termination of *coverage,* not for the termination of payments for claims for which coverage has been established.

---

**3.** Wheeler argues that the amendment was not effective January 1 because (1) Dynamic did not sign a reinsurance contract with Blue Cross/Blue Shield until March 4, 1994, and (2) Dynamic did not timely file a plan summary with the Secretary of Labor. The district court expressly did not decide when, if at all, the amendment took

place. *Wheeler v. Dynamic Eng'g, Inc.,* 850 F.Supp. 459, 463 (E.D.Va.1994).

**4.** Under the 1993 plan's timely claims filing provision, a claim must be submitted within "three consecutive calendar months following the calendar year in which the claim was incurred."

Therefore, we must determine whether Wheeler's expenses for HDC/PSCR were "incurred" prior to January 1, 1994, within the meaning of the 1993 plan.

Dynamic's 1993 medical care plan does not define when an expense is deemed "incurred." [5] When construing insurance policies limiting coverage to expenses incurred within a certain time period, state courts have found payments for services covered "only when those services were *arranged for,* contracted for or paid for prior to the expiration of the policy time limits." *Fuerstenberg v. Mowell,* 63 Ohio App.2d 120, 409 N.E.2d 1035, 1036–37 (1978) (emphasis added); *see Farr v. Travelers Indem. Co.,* 84 Misc.2d 189, 375 N.Y.S.2d 229 (1975); *Atchley v. Travelers Ins. Co.,* 489 S.W.2d 836 (Tenn.1972); *see generally* Annotation, *When is Medical Expense "Incurred" Under Policy Providing for Payment of Medical Expenses Incurred Within Fixed Period of Time from Date of Injury,* 10 A.L.R.3d 468 (1966).

■ Here, the district court found that Wheeler began the first step of the multistage HDC/PSCR procedure on December 15, 1993. The district court found as a factual matter that HDC/PSCR, although it involved several phases, was a single, multistage medical procedure. We have likewise recently held that HDC/PSCR should be regarded as a single treatment for purposes of coverage under an ERISA health care plan. *Hendricks v. Central Reserve Life Ins. Co.,* 39 F.3d 507, 514–15 (4th Cir.1994). This case thus presents the unusual situation in which a policy terminates while an insured is in the first stage of a medical procedure covered under the terminated policy.

Few courts have addressed this situation, but most of them have concluded that coverage for the entire procedure vests when the procedure begins. For example, in *Atchley,* Atchley was insured under a medical policy covering expenses incurred within one year from the date of an accidental injury. He fractured his right leg in an accident and as part of his treatment had two metal screws temporarily implanted into his tibia. After the year had expired, Atchley had the screws removed and sought coverage for the removal. The court held that because removal of the screws was a necessary part of a procedure that began within one year of the accident, the cost of removal was incurred when the screws were inserted. 489 S.W.2d at 836–37. Similarly, the court in *Butler v. Provident Life & Accident Ins. Co.,* 617 F.Supp. 724 (D.C.Miss.1985), considering a

> hypothetical man who contracts a hypothetical ailment; begins treatment with the expectation that the treatment *will end* with an operation within three months; and then is terminated prior to that operation,

said that such a man would be covered under his group insurance policy under Mississippi law. *Id.* at 729 (emphasis in original). *See also Whittle v. Government Employees Ins. Co.,* 51 Misc.2d 498, 273 N.Y.S.2d 442 (N.Y.Sup. 1966) (under plan covering expenses incurred within one year of accident, expenses for dental work commenced but not completed within one year of accident were "incurred" within that year).

■ We agree with the reasoning of *Atchley* and *Butler.* When an insured arranges for and begins a particular medical procedure, she has for all practical purposes committed herself to undergo all required steps in that procedure. Accordingly, she has "incurred" all expenses stemming from it. This interpretation of Dynamic's policy best accords with the reasonable expectations of insureds. *See Elmore v. Cone Mills Corp.,* 23 F.3d 855, 869 (4th Cir.1994) (en banc) (ERISA's purpose is "to protect the expectations of those who are the beneficiaries of the Plan.") (Murnaghan, J. concurring). As the Washington Supreme Court has aptly stated,

> [w]e find it difficult to believe that the "average man purchasing insurance" would, or could, contemplate from a read-

---

**5.** In contrast, Dynamic's 1993 dental plan expressly defines when an expense is "incurred." Under the dental plan, an expense is generally deemed incurred when the service is performed. However, in the case of certain extended procedures such as denture, crown, and root canal work, the expense for the entire procedure is deemed incurred when an initial stage of the procedure is performed.

ing of this contract that the defendant's obligation terminates when the clock strikes midnight and the contract year ends, even though the insured may still be hospitalized or in need of further medical treatment. . . .

*Myers v. Kitsap Physicians Serv.*, 78 Wash.2d 286, 474 P.2d 109, 111 (1970) (en banc). If an employer could terminate coverage during the middle of a procedure, leaving an employee without insurance (and likely unable to obtain alternative coverage), an employee would be unable to make an intelligent decision about whether to begin a particular procedure, even when that procedure is plainly covered under an existing ERISA plan. For this reason, we have previously noted that limits may exist on an employer's ability to rely on an amendment to deny coverage previously established. *Doe v. Group Hospitalization & Medical Serv.*, 3 F.3d 80, 83 n. * (4th Cir.1993) ("[A]ny attempt by Blue Cross to rely on a post-precertification pre-therapy amendment to deny benefits to John Doe . . . might raise serious questions concerning Blue Cross' duties, both as a fiduciary and under the insurance contract with Firm Doe, and its good faith."). We therefore hold that Wheeler incurred the expenses for her HDC/PSCR treatment, and coverage for these expenses vested under the 1993 plan, when she entered the first stage of the procedure in December of 1993.

The two cases upon which Dynamic principally relies, *Owens v. Storehouse, Inc.*, 984 F.2d 394 (11th Cir.1993), and *McGann v. H & H Music Co.*, 946 F.2d 401 (5th Cir.1991), are inapposite. In each of these cases an employee with AIDS sued his employer under § 510 of ERISA when the employer amended its health plan to eliminate coverage for AIDS-related claims. Section 510 prohibits an employer from discriminating against an employee for exercising his rights under ERISA. Each court rejected the employee's claim that his employer could not reduce his AIDS benefits once he was diagnosed with AIDS and began making claims for treatment. Essentially, the employees

argued that the right to benefits for any potential future treatment for AIDS they might undergo throughout their lifetimes vested at the moment they were diagnosed with the disease.[6] In contrast, Wheeler seeks coverage for a particular medical procedure whose scope is relatively short and well defined. We believe a meaningful distinction may be made between HDC/PSCR, a specific procedure terminating after several months, and treatment for AIDS, which continues throughout an employee's lifetime and may well involve a variety of unforeseeable future procedures. *See Butler*, 617 F.Supp. at 729 (noting that comparison of the long-term disease, diabetes, to a nine-month pregnancy for coverage purposes would be "a comparison of apples and oranges").

When an insured begins a particular multi-stage treatment, culminating in a final step within a fixed period of time and with the preliminary stages intended as preparation for the final step, she relies on the fact that the entire procedure will be covered. If her coverage terminated part way through the procedure, she would be required personally to pay the costs of the final stages or else lose all of the benefit of the preliminary stages. When the entire procedure terminates within a fixed and relatively short period of time, it poses little danger of imposing massive unforeseen costs on the employer. Finding coverage for such a procedure is entirely different from finding coverage for lifelong treatment of a particular illness, including potentially unforeseeable costs, simply because the illness was diagnosed while a policy was in force.

In summary, Wheeler submitted a claim for, arranged for, and began HDC/PSCR, a well-defined procedure of limited duration, while she was covered under Dynamic's 1993 plan. Accordingly, the expenses associated with HDC/PSCR were incurred, and coverage for them vested under the 1993 plan, in December 1993. Dynamic's subsequent amendment may not apply retroactively to deny her coverage.

---

**6.** A third case that Dynamic cites, *Coonce v. Aetna Life Ins. Co.*, 777 F.Supp. 759 (W.D.Mo. 1991), dealt with a continuing course of psychiat-

ric treatment and therefore also falls into the same category as *Owens* and *McGann*.

### B.

 Dynamic also challenges the district court's award of attorneys' fees and costs to Wheeler. ERISA allows a court to award "a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). The determination whether to award fees and costs lies "completely within the discretion of the district court." *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028 (4th Cir.1993). We have instructed district courts to consider the following five factors in exercising their discretion:

(1) degree of opposing parties' culpability or bad faith;

(2) ability of opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Id.* at 1029 (citing *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217–18 (4th Cir.1990)). These five factors are meant as general guidelines and not as a rigid test. *Id.*

The district court held that four out of these five factors favored granting attorneys' fees and costs to Wheeler. First, it determined that Dynamic displayed bad faith by failing to inform Wheeler that it was about to change plans when she submitted her claim and by ignoring the possibility that her treatment was covered under the previous (1993) plan. Second, it found that awarding fees would deter future administrators from displaying the same type of bad faith. Third, it held that the question that Wheeler addressed, an employer's ability to terminate coverage from a treatment already begun, was an important ERISA issue. Finally, it noted that Wheeler prevailed on the merits. The court found that the remaining factor, ability to pay, weighed neither for nor against an award of fees.

 Dynamic's main contention is that it did not act in bad faith. It notes that Marchesani passed Wheeler's claim on to Blue Cross after receiving it and forwarded Blue Cross's negative response promptly on to Wheeler. It claims that any failure on its part was merely due to oversight or mistake. We agree that mere negligence or error does not constitute bad faith. *Reinking*, 910 F.2d at 1218. However, here the district court found that Dynamic failed to inform Wheeler in a timely fashion that it was amending its medical coverage. Dynamic also failed to determine whether Wheeler might be covered under the 1993 plan, examining coverage only under the 1994 Key Care II plan. The district court has broad discretion to determine whether these failures were due to mere oversight or to bad faith, and we find that the court acted within its discretion. Furthermore, even disregarding the finding of bad faith, the court found that the majority of the remaining *Reinking* factors favored an award of fees. Therefore, we find that the court did not abuse its discretion by awarding fees.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED.*