NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0403n.06

No. 11-4126

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Apr 22, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JAMES R. PRICE, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) On Appeal from the United |
| v. | ) States District Court for the |
| | ) Southern District of Ohio |
| BOARD OF TRUSTEES OF THE INDIANA | ) |
| LABORER'S PENSION FUND; INDIANA | ) |
| LABORER'S PENSION FUND, | ) |
| | ) |
| Defendants-Appellants. | ) |

**BEFORE:**   SUTTON and McKEAGUE, Circuit Judges; and JONKER,[*] District Judge.

PER CURIAM.  Quite a bit of ink has been spilled in this case, making us reluctant to add another opinion to the two this court has already issued.  But in his petition for rehearing, James Price makes three claims worthy of response:  (1) that our opinion creates a split in the circuit courts of appeals; (2) that the decision is inconsistent with our own circuit precedent, including one newly cited case; and (3) that disability benefits vest as a matter of law whenever a beneficiary becomes disabled, prohibiting the trustees of the plan from ever making changes to those benefits, no matter the terms of the benefits plan.

1.  In claiming that this case would come out differently if Price lived elsewhere in the country, Price mentions several court of appeals decisions.  But on examination they

---

[*] Hon. Robert J. Jonker, United States District Judge for the Western District of Michigan, sitting by designation.

do not live up to his claim. Some of the courts have held that plan amendments may not force beneficiaries to return money already paid out. *See Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan v. Wells*, 213 F.3d 398 (7th Cir. 2000); *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sapulpa*, 130 F.3d 950 (10th Cir. 1997). Others have held that a board may not amend a plan to avoid medical coverage for treatment a beneficiary has already arranged or accidents a beneficiary has already suffered. *See Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634 (4th Cir. 1995); *Confer v. Custom Eng'g Co.*, 952 F.2d 41 (3d Cir. 1991). Others have held that a board may not amend disability benefits if the plan language does not give it that authority. *See Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202 (2d Cir. 2002); *Howe v. Varity Corp.*, 896 F.2d 1107 (8th Cir. 1990). And others have held that life insurance benefits vest when an insured dies. *See, e.g.*, *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634 (4th Cir. 2007), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). These cases have two things in common: We do not disagree with any of them, and they do not help to resolve this distinct dispute.

2. Much the same can be said about his efforts to re-plow the ground covered by one case from our circuit and to add a new one. In *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368 (6th Cir. 1994), Quantum transferred some employees to a new company in April and allowed them to cash out their retirement plans in October. A dispute arose about whether Quantum should calculate the value of the plans as of April (when they were worth more), or October (when they were worth less). April, we answered: The plan language said

2

retirement benefits vested when an employee was "terminated," and transfers count as a "termination." That answer, however, says nothing about whether Price's disability benefits were vested under the terms of *his* plan. *Cattin v. Gen. Motors Corp.*, 955 F.2d 416 (6th Cir. 1992), is of a piece. After offering additional retirement benefits for some time to employees who had reached thirty years of service, General Motors cancelled the program. We saw no problem with the change, a holding that cannot possibly help other employees seeking to prevent the cessation of benefits.

3. As for Price's proposed rule that disability benefits, once initially provided, may never be altered, we cannot ignore the source of those benefits: the terms of the plan. One path to Price's approach would be to extend the "vesting" limitation on benefits changes to disability benefits. But as our first opinion showed and as Price no longer seems to disagree, that possibility cannot be squared with the way "vesting" is used throughout the plan—namely, to apply only to traditional retirement benefits. *See Price v. Bd. of Trs. of the Ind. Laborer's Pension Fund*, 632 F.3d 288, 297–98 (6th Cir. 2011). That leaves the meaning of all of the language that permits the board to "amend" the plan in ways that do not reduce "rights" that "have already become vested." No one, including Price, seems to disagree that the plan gives the board of trustees broad discretion to interpret this language and that we as a result must respect that interpretation—unless it enters the forbidden land of arbitrariness and capriciousness. *Id.* at 296. Left to our own devices, we might have construed this language to prohibit the ending of disability benefits after a disability has occurred. But that is not the interpretation the trustees adopted. The

plan has finite resources and competing demands on those funds, all beyond our ken, which is why the plan empowers trustees, not federal judges, to change its terms—including by extending disability benefits for two years but no longer and including by changing the plan in ways we might not have changed it ourselves.

At oral argument, Price's lawyer conceded that, if the plan had clarified that the authority to amend extended to disability benefits after the disability had occurred, nothing would have stood in the way of the board's action. *Price v. Bd. of Trs. of the Ind. Laborer's Pension Fund*, 707 F.3d 647, 651 n.2 (6th Cir. 2013). If that is so, we are hard pressed to understand how the plan's silence on this score somehow divests the board of authority to construe the plan in this manner. Silence equals ambiguity; ambiguity equals discretion; and discretion is difficult to second guess when it involves allocating finite resources to a range of people over a long period of time. Having no responsibility for the finite resources of the plan ourselves and having no knowledge what other demands have been placed on those resources, we must exercise caution before we call such a choice arbitrary and capricious. We don't think it was.

Nor, in contrast to life insurance, are disability benefits fixed. Not all disabilities are permanent; many, mercifully, are not. And not all disabilities end an employee's capacity to work; many, mercifully, do not. Surely the board, under the terms of this plan, could make amendments to account for these features of disability benefits and many others, even after an employee's disability had occurred: the need to define, refine or redefine the prerequisites of a disability; the frequency with which a former employee must certify that

4

a disability continues to exist; the number of doctors that must sign off on a medical diagnosis; the need to account for set-offs for other benefits, including Social Security; or the need to account for set-offs for income earned through a different job. As with these permissible changes, so with an eventual ending of the benefit plan: The choice was the trustees', not ours. The tough reality is that the terms of the plan gave the trustees broad authority to make amendments to the disability benefits provided to employees. Because the trustees did not exercise that authority in an arbitrary and capricious way, we must respect their choice.

The petition for panel rehearing is denied. Judge Jonker concurs in the result denying rehearing.

The Clerk shall now refer the matter to all of the active members of the court for further proceedings on the suggestion for en banc rehearing.