**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 16-1574**

_____

RETIREMENT COMMITTEE OF DAK AMERICAS LLC, as Plan Administrator of the DAK Americas LLC Pension Plan; TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION,

Plaintiffs-Appellees,

v.

MARK STEPHEN BREWER; WARREN ALBERT GARRISON; JAMES F HOLLAND; SIDNEY HUGH RHODES,

Defendants-Appellants,

and

MENDELL W. SMITH; OTELLA IRENE WEBB; JEROME BRYANT; JOSEPH ALEXANDER BELLAMY; KELVIN L. GALLOWAY; DAVID W. ALLEN; MICHAEL LYNN BASS; HAROLD E. CORBETT; WILLIAM LACEY NELSON; JIMMIE RAY SELLERS; RODNEY B. SMITH,

Defendants.

_____

**No. 16-1575**

_____

RETIREMENT COMMITTEE OF DAK AMERICAS LLC, as Plan Administrator of the DAK Americas LLC Pension Plan; TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION,

Plaintiffs-Appellees,

v.

RODNEY B. SMITH,

        Defendant-Appellant,

and

MARK STEPHEN BREWER; WARREN ALBERT GARRISON; HAROLD E. CORBETT; JAMES F. HOLLAND; WILLIAM LACEY NELSON; SIDNEY HUGH RHODES; JIMMIE RAY SELLERS; MENDELL W. SMITH; OTELLA IRENE WEBB; JEROME BRYANT; JOSEPH ALEXANDER BELLAMY; KELVIN L. GALLOWAY; DAVID W. ALLEN; MICHAEL LYNN BASS,

        Defendants.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Louise W. Flanagan, District Judge. (7:14-cv-00036-FL)

---

Argued: May 10, 2017                         Decided: August 14, 2017

---

Before MOTZ, AGEE, and DIAZ, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge Agee wrote the opinion in which Judge Motz and Judge Diaz joined.

---

**ARGUED:** Thomas S. Babel, WARD & SMITH, PA, Wilmington, North Carolina; William Cory Reiss, SHIPMAN & WRIGHT, LLP, Wilmington, North Carolina, for Appellants. William J. Delany, MORGAN, LEWIS & BOCKIUS, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Jeremy M. Wilson, Wilmington, North Carolina, Michael L. Miller, WARD & SMITH, PA, Raleigh, North Carolina, for Appellants Brewer, Garrison, Holland, and Rhodes. Marianne Hogan, MORGAN, LEWIS & BOCKIUS, LLP, Washington, D.C., for Appellees.

---

AGEE, Circuit Judge:

The complaint in this case, brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, relates to the DAK Americas LLC Pension Plan (the "Plan"), a defined benefit pension plan established by DAK Americas LLC ("DAK") and administered by the Retirement Committee of DAK Americas LLC (the "Committee") with administrative support services provided by Transamerica Retirement Solutions Corporation ("Transamerica," collectively with the Committee, the "Plaintiffs"). The Plaintiffs initiated this lawsuit to recover alleged overpayments of retirement benefits to certain employees of DAK who were participants in the Plan, including Mark Stephen Brewer, Warren Albert Garrison, James F. Holland, Sidney Hugh Rhodes, and Rodney B. Smith (collectively, the "Defendants").[1] The Defendants filed counterclaims asserting they were entitled to retain the disputed funds. On the parties' cross-motions for summary judgment, the district court awarded summary judgment to the Plaintiffs and concluded there was an overpayment of funds which must be returned to the Plan. The Defendants' cross-motions for summary judgment were denied. For the reasons that follow, we affirm in part and vacate in part the judgment of the district court, and remand for certain further proceedings only as to Rodney B. Smith ("Smith").

---

[1] A subset of former DAK employees were named defendants to this lawsuit, but have not joined in this appeal. They returned the overpayment amounts to the Plaintiffs during the course of the litigation in the district court.

3

I.

A.

ERISA contemplates two basic types of pension plans: defined contribution plans and defined benefit plans. This case involves a defined benefit plan, in which the retirement benefit is calculated as a certain annual amount that the plan pays during the employee's lifetime, beginning at the employee's retirement. *See* ERISA § 3(35), 29 U.S.C. § 1002(35). Most defined benefit pension plans offer normal retirement annuity benefits based on a normal retirement age of 65, permitting a participant to retire at that age and receive an unreduced accrued benefit that is calculated based on the terms of the plan. Treas. Reg.. § 1.417(e)–1; *see also, e.g., Lyons v. Georgia-Pac. Corp. Salaried Emps. Retirement Plan*, 221 F.3d 1235, 1252 (11th Cir. 2000) ("The 'normal retirement benefit' . . . is the amount a participant would have received at age 65 under the Plan . . . ."). Many employers also offer plans, like the Plan in this case, that provide early retirement annuity benefits. *See* Barbara J. Coleman, Primer on Employee Retirement Income Security Act 32–33 (4th ed. 1993).

In addition to the traditional monthly annuity benefits, employers may offer participants the option to elect a lump sum. Under ERISA and the Internal Revenue Code, employers that offer defined benefit pension plans providing early retirement annuity benefits maintain latitude in determining what kind of optional lump sum benefit they may choose to provide. See Treas. Reg. § 1.411(a)-11. In industry argot, lump sum benefits may be "subsidized" or "unsubsidized." An "unsubsidized" lump sum benefit is based on a participant's normal retirement date. *See* Treas. Reg. § 1.411(d)-4. By

4

contrast, a "subsidized" lump sum is calculated using a participant's early retirement date. *Id.*

## B.

DAK announced plans to close its Cape Fear, North Carolina, plant in June 2013. The following month, DAK voted to amend the Plan by adding a new benefit option: an unsubsidized lump sum early retirement benefit available to certain of the Plan participants who were separating from service with DAK due to the plant closure. The lump sum would be available in addition to other payment options under the Plan. To implement this additional benefit option, Plan Amendment Number One (the "Amendment") was adopted, which provides, in part:

> 4.15. Special Immediate Payment for Certain Participants: Each Participant in the group of Participants at the Employer's Cape Fear site who is severed from service with the Employer as a result of closing the Employer's plant at the Cape Fear site on or about September 1, 2013 (a "Cape Fear Participant") shall, subject to the spouse consent requirements of Section 4.10(c)(2), have the option to elect to receive an immediate lump sum distribution within 60 days following such severance from service. *Such lump sum shall be Actuarially Equivalent to the Cape Fear Participant's Accrued Benefit* and shall not be available if the Cape Fear Participant does not elect it within such time period. Any such Cape Fear Participant who has not yet reached his Early Retirement Age also shall have the option to receive an actuarially equivalent . . . immediate annuity payable in the form of a Qualified Joint and Survivor Annuity or a Joint and Survivor Annuity . . . .

J.A. 54 (emphasis added). In voting to adopt the Amendment, the only item considered was a calculation offering a one-time unsubsidized lump sum based on a participant's Accrued Benefit at Normal Retirement Date.

5

Unless otherwise specifically stated in the Amendment, the terms defined in the Plan govern the Amendment. *See United McGill Corp. v. Stinnett*, 154 F.3d 168, 173 (4th Cir. 1998) ("[W]e are bound to enforce the contractual provisions as drafted."). For instance, the Plan defines "Accrued Benefit" as "[t]hat portion, at any given date, of a Participant's *Normal Retirement Benefit* that has accrued at such date."[2] J.A. 63 (emphasis added). And a participant's "Normal Retirement Benefit" is "[t]he benefit payable at the Normal Retirement Date, as described in Section 4.1." J.A. 77. In turn, Section 4.1 describes the Normal Retirement Benefit available under the Plan, including who is eligible for the Normal Retirement Benefit, how that benefit is calculated, and the form in which it is to be paid (a monthly life annuity). A Plan participant's Normal Retirement Date corresponds with "[t]he first day of the month coinciding with or next following a Participant's Normal Retirement Age." J.A. 77.

The Plan also offers an Early Retirement Benefit option, described in Section 4.3 of the Plan as "payable at a participant's Early Retirement Date." J.A. 68. "Early Retirement Date" is defined as "[t]he first day of any calendar month after a Participant's Early Retirement Age and before his Normal Retirement Age on which the Participant elects to begin receiving Early Retirement Benefits." J.A. 68. Participants who meet certain age and years of service requirements may elect an Early Retirement Benefit (in lieu of waiting for the Normal Retirement Benefit) in the form of a monthly annuity

---

[2] Accrual of benefits under the Plan were frozen as of December 31, 2006.

"reduced based on the Participant's age when benefits begin and Years of Service" under the Plan. J.A. 94.

On September 30, 2013, the Plaintiffs sent a letter ("September 30 Letter") to eligible Plan participants informing them of the Amendment's lump sum benefit option in addition to the existing Early Retirement and Normal Retirement annuities. That letter summarized the lump sum amount available under the Amendment, but the amount stated was incorrectly calculated. Transamerica had calculated the lump sum payment based on the actuarial equivalent at the Early Retirement Date for the Plan participants, not the Normal Retirement Date. Acting on this information in the September 30 letter, some plan participants made an election to receive the lump sum in lieu of either the Early Retirement or Normal Retirement annuities. Due to the calculation error, the Defendants received more generous lump sum payments than those to which they were entitled.

The Defendants were notified of the error two months after the initial, incorrect lump sum calculations and less than a month and a half after receiving the incorrect lump sum distributions. In a letter dated December 5, 2013 (the "December 5 Letter"), the Plaintiffs notified the Defendants there had been a calculation error and provided the correct amount for the lump sum that should have been paid under the Amendment. The December 5 Letter also included a revised election package so that Plan participants could elect the correct alternative lump sum benefit option if they did not wish to receive payments under the Plan's annuity provisions. In addition, the December 5 Letter informed Defendants that failure to promptly return the overpayment amount to the Plan

7

could result in "significant negative tax consequences" and described those potential tax liabilities. J.A. 188.

The Defendants were again advised of their individual corrected lump sum benefit amounts and given a second election opportunity in a letter dated December 16, 2013 (the "December 16 Letter"). This letter provided a 60-day window to make anew their retirement benefits election. Attached to that letter was a Calculation Worksheet that explained in detail the two lump sum calculations and the reason for the erroneous initial calculation.

Collectively, the Defendants received lump sums totaling $2.6 million, which included $928,000 in alleged overpayments. Most of the Plan participants affected by the lump sum calculation error either returned the entire lump sum payment and elected an annuity option benefit during the second 60-day election window or simply returned the amount of the stated overpayment. Although each of the Defendants had the second election opportunity while possessing the correct information regarding the lump sum amount and the adverse tax consequences of failing to return the funds promptly, the Defendants did not remit the disputed funds or make an alternate election.

C.

In view of the Defendants' failure to timely remit the disputed payments, the Plaintiffs filed suit in the United States District Court for the Eastern District of North Carolina, asserting an equitable restitution claim under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(3). The Defendants asserted counterclaims for breach of

fiduciary duty and constructive fraud, seeking surcharge as a remedy. They also asserted an equitable estoppel defense. In particular, the Plaintiffs sought an order requiring the Defendants to return the claimed pension benefit overpayments. The district court entered a preliminary injunction on March 24, 2014, pending final resolution of the case, which enjoined the Defendants from spending, transferring, or otherwise diminishing the disputed funds. *Ret. Committee of DAK Ams. LLC v. Smith*, 135 F. Supp. 3d 396 (E.D.N.C. 2015).

The Plaintiffs moved for summary judgment on both their claim for equitable restitution and the Defendants' counterclaims, contending they had established the required elements of an equitable restitution cause of action under ERISA that the alleged overpayments belonged in good conscience to the Plan. According to the Plaintiffs, the Plan's plain language provided for lump sum calculations using only the Normal Retirement Date, not the Early Retirement Date. The Defendants cross-moved for summary judgment on the equitable restitution claim, positing that the Amendment should be read to provide a lump sum calculation based on the Early Retirement Date. Defendant Smith asserted an additional argument supporting his entitlement to a surcharge remedy, claiming that, unlike the other Defendants, he forewent a job opportunity at another DAK facility in reliance on the erroneous calculation of his lump sum retirement benefit that he had elected to receive.

The district court granted the Plaintiffs' motion for summary judgment and denied the Defendants' cross-motions, including defendant Smith's separate motion, concluding that the Plan's plain language did not authorize the purported overpayments to any of the

9

Defendants.  The district court also dismissed the Defendants' counterclaims, reasoning that their equitable estoppel defense failed because it would result in payment of Plan assets inconsistent with the written terms of the Plan.  In addition, the court held the Defendants were not entitled to the remedy of surcharge for any breach of fiduciary duty because they failed to demonstrate actual harm.  Consequently, the district court ordered all the Defendants to return the disputed funds to the Plan.[3]

Defendants timely noted their appeal, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Insomuch as ERISA plans are contracts, summary judgment is appropriate provided there is no ambiguity in the contract or plan.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (ERISA was enacted "'to protect contractually defined benefits'").  "[A]s a general proposition, ERISA plans, as contractual documents, *see Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995), are interpreted *de novo* by the courts."  *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 340 (4th Cir. 2000).

---

[3] The district court entered judgment on September 29, 2015, but failed to include in its order specific language requiring Defendants to return the overpayments, and Defendants held onto those funds.  DAK timely moved to amend the judgment to specifically require the Defendants to return the overpayments.  The district court entered an amended judgment with those terms on May 9, 2016.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party,'" and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

### III.

The Plaintiffs asserted an equitable restitution claim in the district court for return of the disputed funds, which they alleged were erroneously paid contrary to the terms of the Plan. ERISA authorizes civil actions "by a participant, beneficiary, or fiduciary . . . to obtain . . . appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). To establish a right to equitable restitution under ERISA, claimants must show that they seek to recover property that (1) is specifically identifiable, (2) belongs in good conscience to the plan, and (3) is within the possession and control of the defendant. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362–63 (2006).

The Defendants do not dispute that the alleged overpayments are specifically identifiable funds and within their possession and control.[4] The only element of the

---

[4] Indeed, the district court found as much in its preliminary injunction order. *Ret. Comm. of DAK Ams. LLC*, 135 F. Supp. 3d at 402 (enjoining each defendant from "spending, transferring, or otherwise diminishing the alleged overpayments").
(Continued)

11

equitable restitution cause of action in dispute is whether the disputed funds belong in good conscience to the Plan. The Plaintiffs contend the plain language of the Plan authorized only a lump sum benefit calculation based on each participant's Normal Retirement Date, not a sum based on his or her Early Retirement Date. The Defendants contend there was no overpayment because the Plan's language contemplates calculation of the lump sum benefit based on each participant's Early Retirement Date. Distilled to its core this appeal turns on the proper reading of the following language from the Amendment: "Such lump sum shall be Actuarially Equivalent to the Cape Fear Participant's Accrued Benefit . . . ." J.A. 54.

Every defined benefit plan, like the Plan, is required by ERISA to offer as the standard and default benefit an unsubsidized Normal Retirement Benefit in the form of an annuity. *See* 26 U.S.C. § 411; J.A. 91-92. Plans, like the Plan, may also offer an Early Retirement Benefit in the form of a subsidized annuity. *See* 26 U.S.C. § 411; J.A. 93-94. The issue in the case at bar turns on whether the plain language of the Plan and the Amendment requires the optional lump sum benefit to take the form of an unsubsidized lump sum based on a normal retirement annuity and not an early retirement annuity.

This Court applies the federal common law of contracts to interpret ERISA plans. *See Bruch*, 489 U.S. at 110; *Wheeler*, 62 F.3d at 638. ERISA requires that all employee benefit plans "be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and that it shall "provide a procedure for amending such plan, and for

identifying the persons who have authority to amend the plan," *id.* § 1102(b)(3). "Based upon this statutory scheme, any modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58–59 (4th Cir. 1992). "To the extent the administrator enjoys discretion to interpret the terms of a plan in the course of making a benefits-eligibility determination, such interpretive discretion applies *only to ambiguities* in the plan." *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 639 (4th Cir. 2007). "[D]iscretionary authority is not implicated [where] the terms of the plan itself are clear," *Kress v. Food Emp'rs Labor Relations*, 391 F.3d 563, 567 (4th Cir. 2004), and "[a]n administrator's discretion never includes the authority to read out unambiguous provisions contained in an ERISA plan," *Blackshear*, 509 F.3d at 639 (internal quotation marks omitted). Thus, we must enforce "the plain language of an ERISA plan . . . in accordance with its literal and natural meaning." *United McGill Corp. v. Stinnett*, 154 F.3d at 172 (internal quotation marks omitted).

Guided by these precepts, we first consider the plain language of the Amendment and the Plan. The Amendment provides a lump sum benefit option that is "Actuarially Equivalent to the Cape Fear Participant's Accrued Benefit." J.A. 54. The Plan defines "Accrued Benefit" as the "portion, at any given date, of a Participant's Normal Retirement Benefit that has accrued at such date." J.A. 63. "Normal Retirement Benefit," in turn, is "[t]he benefit payable at Normal Retirement Date," which is, "[t]he first day of the month coinciding with or next following a Participant's Normal Retirement Age." J.A. 77; *see also* J.A. 91–92.

13

On its face, the Amendment offered the Plan participants the right to elect, should they so choose, a lump sum in the actuarially equivalent amount of the benefit (an annuity) payable at his or her Normal Retirement Date. But those Plan participants, like the Defendants, who elected to receive the lump sum benefit instead of the annuity otherwise payable under the Plan, instead received a payment calculated by determining the actuarial equivalent of an annuity commencing at the Defendants' Early Retirement Date. That payment was contrary to the written terms of the Plan because it was not the lump sum benefit provided under the Amendment.

The Defendants contend the Amendment should be read to provide a lump sum benefit calculated using their Early Retirement Benefit under the Plan. They are mistaken.

The Plan explicitly provides that calculation of the lump sum payment must be based upon the Plan participant's Normal Retirement Benefit, which operates from an entirely separate provision under the Plan than the Early Retirement Benefit. Nothing in the Amendment alters the Plan definitions of the Early Retirement Benefit, Accrued Benefit, Normal Retirement Benefit, or Normal Retirement Date. All the Amendment did was add an optional form of payment, but it did nothing to alter the definitional terms of the Plan by which that optional form would be calculated.

The district court correctly applied the plain language of the Plan in determining the Plan authorized only calculating the lump sum as referenced in the December 5 letter based on the Normal Retirement Benefit at the Normal Retirement Date. To adopt the Defendants' suggestion would require us to rewrite the Plan by substituting "Early

14

Retirement Benefit" for "Normal Retirement Benefit" in the definition of Accrued Benefit. This we cannot do. *United McGill Corp.*, 154 F.3d at 172 ("[O]ne of the primary functions of ERISA is to ensure the integrity of written, bargained-for benefit plans. To satisfy this objective, the plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." (internal citation and quotation marks omitted)). Consequently, the surfeit of funds constituted overpayments that in good conscience belong to the Plan.

Having thus established all three elements of an equitable restitution claim as a matter of law, the Plaintiffs were entitled to summary judgment absent proof by the Defendants of some defense as a bar or offset. The Defendants fail in that endeavor.

They first argue the unsubsidized lump sum—a lump sum calculated under the Amendment using the Normal Retirement Date—deprived them of an early retirement subsidy in violation of ERISA's "anti-cutback rule." That rule typically prohibits decreasing or eliminating a participant's accrued benefit through a plan amendment or other fiduciary action. *See* 29 U.S.C. § 1054(g). However, nothing in ERISA requires a retirement benefit plan to subsidize early retirement benefits in the form of both a lump sum and an annuity. Rather, a plan may subsidize early retirement benefits only in an annuity form and separately calculate any lump sum amount as an unsubsidized benefit. *See, e.g., Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000) ("[t]his rule that *regardless of any option as to timing or form of distribution*, a vested participant in a defined benefit plan must receive a benefit that is the actuarial equivalent of her [unsubsidized] *normal retirement benefit* (that is, the accrued benefit expressed as an

15

annuity beginning at normal retirement age) has been repeatedly recognized by courts" and collecting cases); *cf. Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 743–50 (2004) (recognizing violation of the anti-cutback rule where plaintiffs had received early retirement subsidies, but plan amendment caused those subsidies to be suspended).

Here, neither the Plan, nor the Amendment, reduced or eliminated any benefit which a participant had accrued. Rather, the Amendment allowed each Defendant to (1) continue to receive his or her accrued benefit of a subsidized immediate single life annuity under the Plan that took into account his or her Early Retirement Benefit *or* (2) elect instead a new benefit as an immediate, but unsubsidized, lump sum that would be actuarially equivalent to his or her Accrued Benefit payable at the employee's Normal Retirement Date. Of course, a participant was not required to take either the optional lump sum or the Early Retirement Benefit annuity, but could simply await the Normal Retirement Benefit at the Normal Retirement Date. Accordingly, the Amendment did not violate the anti-cutback rule because it did not "eliminate[e] or reduc[e] an early retirement benefit" that had already accrued. *Cent. Laborers' Pension Fund*, 541 U.S. at 744.[5]

---

[5] Defendants suggest that once the September 30 Letter was sent with the incorrect lump sum amounts, those amounts became a protected benefit under the anti-cutback rule, even though they conflict with and violate the plain language of the Plan. In other words, Defendants ask us to hold that the Plaintiffs violated the anti-cutback rule by correcting the lump sum calculation error as required by the terms of the Plan. That argument directly conflicts with ERISA. *See* 29 U.S.C. § 1102 (stating "every employee benefit plan shall be established and maintained pursuant to a written instrument," and such writing shall include "a procedure for amending such plan, and for identifying the persons who have authority to amend the plan"). Accordingly, the September 30 Letter could not have created an accrued benefit that contradicted the terms of the Plan. Further, the letter did not comply with the established procedures for amending the terms (Continued)

16

The applicable Treasury Regulations confirm the principle that ERISA plans may opt to subsidize early retirement benefits in the form of an annuity, but not when taken in other forms. The Plan complied with the Regulations. For instance, Treasury Regulation § 1.411(a)-11(a)(2) provides:

> Accrued benefit. For purposes of this section, an accrued benefit is valued taking into consideration the particular optional form in which the benefit is to be distributed. The value of an accrued benefit is the present value of the benefit in the distribution form determined under the plan. For example, a plan that provides a subsidized early retirement annuity benefit may specify that the optional single sum distribution form of benefit available at early retirement age is the present value of the subsidized early retirement annuity benefit. In this case, the subsidized early retirement annuity benefit must be used to apply the valuation requirements of this section and the resulting amount of the single sum distribution. However, if a plan that provides a subsidized early retirement annuity benefit specifies that the single sum distribution benefit available at early retirement age is the present value of the normal retirement annuity benefit, then the normal retirement annuity benefit is used to apply the valuation requirements of this section and the resulting amount of the single sum distribution available at early retirement age.

*See also* Accrued Benefit, Cash-Out Rules, 53 Fed. Reg. 31837-03 (Aug. 22, 1988), preamble to Treas. Reg. § 1.401(a)–11 ("A plan may have more than one optional form of benefit under which benefits may be paid. There is no requirement that each form of benefit be the actuarial equivalent of all other benefit forms. . . . [A] plan may provide for a retirement subsidy or an early retirement benefit that applies to the payment of a specific optional form. Whether these subsidies must be valued when calculating the

---

of the Plan. *See* J.A. 165 (stating "[a]n amendment shall be made in writing and executed by one or more officers of the Employer . . ." and proving "no amendment . . . shall . . . [i]ncrease the duties or liabilities of the Employer or Committee without its consent"); *see also* J.A. 165–67 (setting out the Plan's amendment process).

amount of the single sum distribution depends on the plan provisions."); Background, 68 Fed. Reg. 70141-01 (Dec. 17, 2003), preamble to Treas. Reg. § 1.417(a)(3)-1 ("If a plan provides a subsidy for one optional form of benefit (i.e., the payments under an optional form of benefit have an actuarial present value that is greater than the actuarial present value of the accrued benefit), there is no requirement to extend a similar subsidy (or any subsidy) to every other optional form of benefit. Thus, for example, a participant might be entitled to receive a single-sum distribution upon early retirement that does not reflect any early retirement subsidy in lieu of a QJSA that reflects a substantial early retirement subsidy.").

Treasury Regulation § 1.411(a)–11 specifically authorizes a plan that offers a lump sum at early retirement age to employ the normal retirement annuity benefit to calculate the unsubsidized lump sum. See Treas. Reg. § 1.411(a)–11(a)(2); *id.* § 1.411(d)–4, Q&A–2(a)(2)(i).[6] This is precisely what the Amendment does.

The Defendants also posit that the district court erroneously read language into the Plan. They argue that "[t]he District Court interpreted this language [from the Amendment] as though it read: Actuarially Equivalent to the Cape Fear Participant's *Normal Retirement Benefit*" rather than his or her "Accrued Benefit." Opening Br. 21. This, they assert, contradicts the language from the Amendment that provides a

---

[6] Treasury Regulations requiring relative value disclosures also demonstrate that a plan is not obliged to incorporate an early retirement subsidy into its lump sum option. *See id.* § 1.417(a)(3)-1(c)(2).

18

calculation of the lump sum based on the Cape Fear Participant's Accrued Benefit. We disagree.

The district court's application of the written language of the Plan is confirmed by the various other statutes and regulations that define "accrued benefit" as commencing at normal retirement age. ERISA, for instance, defines "accrued benefit" as an individual's "accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). Likewise, the definition of "accrued benefit" in the Treasury Regulations also bears the commencement benchmark of normal retirement age. Treas. Reg. § 1.411(a)–7(a)(1) (defining "accrued benefit" as an "annual benefit commencing at normal retirement age"). Case law from our sister Circuits also confirms that interpretation:

> What these provisions mean in less technical language is that: (1) the accrued benefit under a defined benefit plan must be valued in terms of the annuity that it will yield at normal retirement age; and (2) if the benefit is paid at any other time (*e.g.,* on termination rather than retirement) or in any other form (*e.g.,* a lump sum distribution, instead of annuity) it must be worth at least as much as that annuity.

*Esden*, 229 F.3d at 163.

The Defendants also suggest that the use of the word "immediate" in the Amendment means the lump sum must be calculated based on an Early Retirement Benefit. This contention lacks contextual awareness and contradicts the plain language of the Plan's defined terms. The Amendment offers Plan participants the option to receive "an immediate lump sum distribution within 60 days following" their separation from service. Read in context, the word "immediate" in the Amendment means only that

the lump sum, if elected, is payable immediately, *i.e.*, there is no waiting period for the benefit to vest. "Immediate" has no connection to, and does not modify, "Accrued Benefit" under the Plan.

Lastly, we reject Defendants' speculative assertions of fraud on the part of the Plaintiffs. Defendants point to no record evidence to support this narrative, and there is ample record evidence demonstrating the overstated lump sums calculations in the September 30 Letter were the result of an honest mistake. As noted previously, to the extent the Defendants suggest that plan administrators must live with the consequences of errant calculations in all circumstances, the Supreme Court has specifically rejected such a position. *See, e.g., Conkright v. Frommert*, 559 U.S. 506, 513 (2010) (rejecting a "'one-strike-and-you're-out' approach" "where the administrator has previously construed the same plan terms and [the court] found such a construction to have violated ERISA"). Indeed, once the Plaintiffs determined that the lump sum amount had been miscalculated, they were not simply entitled to, but had a fiduciary obligation to, take action to correct the mistake by recovering the erroneous payments as Plan assets. *See* 29 U.S.C. § 1104(a).* * * *

The written language of the Plan clearly and unambiguously provides the lump sum elected by the Defendants was the actuarial equivalent of the Accrued Benefit payable at the employee's Normal Retirement Date. The district court did not err in so holding and awarding summary judgment to the Plaintiffs on their equitable restitution claim.

IV.

Notwithstanding the result compelled by the Plan's plain language, the Defendants contend the Plaintiffs are estopped from recouping the overpaid funds based on the doctrine of equitable estoppel. In support of this view, they recycle their interpretation of the Plan's language and suggest the Plaintiffs, in correcting the lump sum calculations, were attempting to alter the terms of the Plan. This contention is a nonstarter.

ERISA's requirements for altering the terms of an employee-benefit plan are not to be discarded lightly, even in the face of otherwise applicable equitable principles. *See* 29 U.S.C. § 1102(a)–(b). For example, in *Coleman v. Nationwide Life Insurance Co.*, this Court made clear that "[u]se of estoppel principles to effect a modification of a written employee benefit plan would conflict with 'ERISA's emphatic preference for written agreements,'" 969 F.2d at 58, and so "[e]quitable estoppel principles . . . have not been permitted to vary the written terms of a plan," *id.* at 59. Therefore, "[w]hile a court should be hesitant to depart from the written terms of a contract under any circumstances, it is particularly inappropriate in a case involving ERISA, which places great emphasis upon adherence to the written provisions in an employee benefit plan." *Id.* at 56. As a consequence, "[w]e can only regard such a result as a modification . . . as being in direct conflict with the statutory requirements." *Id.* at 59.

Our holding in *Coleman* corresponds with cases from the Supreme Court and our sister circuit courts of appeals, which have recognized this limitation to equitable estoppel in the ERISA context. *See, e.g., US Airways, Inc. v. McCutchen*, 569 U.S. 88, 133 S. Ct. 1537, 1547–48 (2013) (holding equitable principles cannot override clear plan

terms); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 956 (9th Cir. 2014) ("[A] plaintiff may not bring an equitable estoppel claim that would result in a payment of benefits that would be inconsistent with the written plan, or would, as a practical matter, result in an amendment or modification of a plan . . . ." (internal quotation marks omitted)); *Livick v. Gillette Co.*, 524 F.3d 24, 31 (1st Cir. 2008) (same).

As discussed in detail above, the Defendants were entitled to elect the lump sum benefit provided by the Amendment: that is a lump sum calculated using the Plan participant's Accrued Benefit based on the Normal Retirement Benefit at the Normal Retirement Date under the Plan. The Defendants received, however, a lump sum based on their Early Retirement Benefit, which resulted in an overpayment contrary to the Plan's plain terms. Based on the clear precedent from this Circuit and others, the doctrine of equitable estoppel cannot be used to require the payment of benefits that conflicts with the express, written terms of the Plan. *Coleman*, 969 F.2d at 57 ("Courts are not at liberty to disregard the plain language of a[n ERISA] plan . . . ."). Thus, equitable estoppel has no applicability in this case.[7]

V.

---

[7] Faced with the mountain of authority negating their argument, Defendants cite only an unpublished, out-of-circuit opinion in support: *Paul v. Detroit Edison Co. & Mich. Consol. Gas Co. Pension Plan*, 641 F. Appx. 588 (6th Cir. 2016). Even if we were to assume *Paul* was correctly decided, it offers Defendants no help here, as it is factually inapposite and of no precedential value.

22

The Defendants urge us to hold that the district court erred in granting summary judgment in the Plaintiffs' favor as to their counterclaim for breach of fiduciary duty and corresponding request for the remedy of surcharge. "Equity courts possess[] the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty . . . ." *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011). The surcharge remedy can extend to a breach of trust committed by a fiduciary encompassing the violation of a duty imposed upon that fiduciary. *Id.* at 441–42. Considering the equitable remedies available under ERISA § 502(a)(3), the Supreme Court has explained:

> To be sure, just as a court of equity would not surcharge a trustee for a nonexistent harm, a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm—proved (under the default rule for civil cases) by a preponderance of the evidence. That actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents. In the present case, it is not difficult to imagine how the failure to provide proper summary information, in violation of the statute, injured employees even if they did not themselves act in reliance on summary documents—which they might not themselves have seen—for they may have thought fellow employees, or informal workplace discussion, would have let them know if, say, plan changes would likely prove harmful. We doubt that Congress would have wanted to bar those employees from relief.

*Id.* at 444 (internal citation omitted). The Court went on to hold that to obtain relief by surcharge, a plan participant must "show that the violation injured him or her." *Id.* "Although it is not always necessary to meet the more rigorous standard implicit in the words 'detrimental reliance,' actual harm must be shown." *Id.*

We assume, without deciding, that the particular facts of this case could establish a finding that the Plaintiffs breached their fiduciary duty and turn instead to consider whether any of the Defendants (except Smith, whom we address separately below) can

23

establish a triable issue of fact as to "actual harm" in connection with their claims for a surcharge remedy.

Here, the Defendants assert various categories of harm allegedly resulting from DAK's September 30 Letter with regard to the lump sum payment option. For instance, they allude to "life altering decisions," including "further employment" and "investment decisions," without providing specificity as to any purported harm. J.A. 733–35. Any effect of the choices derived from the Defendants' decision to retain the overpaid funds occurred *after* DAK had fully communicated the correct lump sum amount and *before* any alleged losses occurred. For example, Defendants contend they were subject to unwarranted income and excise taxes because of the overpayments. However, Defendants have no one to blame but themselves here as the December 5 and 16 Letters warned them of the consequences of failing to timely return the overpayments, stating:

> Please be aware that there are significant negative tax consequences to you if you do not promptly repay the overpayment amount. The overpayment amount is not eligible for rollover into an IRA, and therefore the overpayment amount is subject to income taxes as well as an additional 6% excise tax if not removed from your IRA on a timely basis.

J.A. 188. Defendants cannot manufacture a surcharge remedy from the effects of their own informed choices. We therefore fail to see how these speculative and undefined claims of loss bear any causal nexus to a fiduciary breach that could warrant surcharge.

Smith is the only defendant with a viable surcharge claim for purposes of summary judgment. He contends that he relied on the erroneous lump sum calculation when he declined an offer to transfer to another DAK facility in the summer of 2013. In support of his argument, Smith posits that a senior manager at a DAK facility in South

24

Carolina, Bryan P. Beck,[8] offered him a position in the maintenance division of that facility. Beck's sworn statement supports Smith's allegation as it provides:

> In the summer of 2013, I met with Rodney Smith, who was then employed at the Cape Fear facility, about one of the positions available at the Columbia, S.C., facility, and I determined that he was my top choice for that job. . . . I offered Rodney Smith the job if he wished to relocate to Columbia, S.C. . . . Had Rodney Smith accepted this offer, I would have hired him. . . . Rodney Smith later informed me, however, that DAK had offered him a generous retirement package, which he had decided to accept instead.

J.A. 837. Smith also offered as evidence that DAK's online retirement calculation tool advised that his lump sum payment would be equal to an "unreduced benefit" under the Plan. J.A. 810. Smith asserts he relied on that alleged misrepresentation when he "declined the offered job at DAK's South Carolina facility." J.A. 811. This result was to his financial detriment, Smith argues, when his lump sum benefit was reduced. Specifically, Smith's affidavit states:

> Had I known in August or September of 2013 that the lump sum amount would be $363,325.52, I would not have chosen to retire; I would have accepted the transfer position in South Carolina. . . . Despite attempting to recover funds from me, DAK never offered me the job that I declined in reliance on the original representations about the lump sum amount. . . . Because of the representation of DAK and Transamerica, I have foregone substantial earnings and benefits that I would have received had I accepted the transfer position in South Carolina.

J.A. 812. For its part, the Plaintiffs dispute any breach of fiduciary duty or that Beck had the authority to hire Smith. But these are issues of material disputed fact that cannot be resolved on this record for purposes of summary judgment.

---

[8] Beck was "responsible for recruitment and hiring" of engineers in his division of DAK's manufacturing facility in Columbia, South Carolina. J.A. 837.

25

While we express no view on the merits of Smith's claim, he has tendered evidence from which a reasonable trier of fact could find in his favor under a surcharge theory if the trier of fact found his evidence credible. Smith has demonstrated a triable issue as to whether the Plaintiffs' actions amounted to a breach of fiduciary duty and whether he suffered actual harm by foregoing a specific employment opportunity at another DAK facility based on the Plaintiffs' incorrect representations as to the amount of his lump sum retirement benefit.

Accordingly, we affirm the district court's grant of summary judgment as to all the Plaintiffs except for Smith. As to Smith, we conclude the district court erred when it determined that Smith failed to demonstrate a triable issue of fact as to surcharge. We vacate the judgment against Smith on this claim only and remand the case to the district court for further proceedings only as to Smith's claim seeking surcharge.[9]

---

[9] Defendants also ask the Court to conclude that the district court erred when it denied them a do-over of their election of benefits. The Defendants never raised this matter before the district court until post-judgment in their brief in opposition to the Plaintiffs' motion to amend judgment. The district court properly denied the Defendants' request because they had a prior benefit election opportunity in December 2013 with the correct benefit information, which would have avoided the clawback of overpaid funds and tax deficiencies. Defendants raised this novel remedy for the first time in a reply to DAK's motion seeking a ministerial revision to the district court's judgment pursuant to Federal Rule of Civil Procedure 59. Defendants' response did not comply with Federal Rule of Civil Procedure 7(b) and they failed to follow any procedural vehicle by which to raise a new claim for relief. The district court did not err in denying Defendants' request.

## VI.

For the reasons set forth above, the district court's decision is

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED.*